

GOLDMAN
ISMAIL
TOMASELLI
BRENNAN &
BAUM LLP

# MEMO ENDORSED

Alan Littmann
312.881.5969
alittmann@goldmanismail.com

> A pre-motion conference will be held on October 2, 2024,
> at 10 a.m. by phone.  Plaintiffs are directed to respond by
> September 25, 2024.  The parties are instructed to call
> (877) 411-9748 and enter access code 3029857# when prompted.
> SO ORDERED.
>
> _____
> Edgardo Ramos, U.S.D.J.
> Dated:  9/19/2024
> New York, New York

**VIA ECF**

September 18, 2024

Honorable Edgardo Ramos
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: *Golland, et al. v. Major League Baseball Advanced Media, L.P.*, Case No. 1:24-cv-06270-ER-OTW

Dear Judge Ramos:

Defendant Major League Baseball Advanced Media, L.P. ("MLBAM") files this pre-motion letter under Rule 2(A)(ii) of the *Individual Practices of Judge Edgardo Ramos* to express its intent to move to strike Plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f) and to dismiss their complaint under Rules 12(b)(6) and 12(b)(1). Below, MLBAM summarizes the primary bases for its motion and proposes a pre-motion conference date and briefing schedule.

**Plaintiffs Agreed to a Class-Action Waiver that Bars this Putative Class Action**

Plaintiffs' class allegations fail under Rule 12(f) because they agreed to a binding class-action waiver in MLBAM's Terms of Use[1] ("TOU"). Plaintiffs bring a single claim under the Video Privacy Protection Act ("VPPA") against MLBAM. (Compl. ¶¶ 1, 85–95.) The VPPA prohibits "video tape service provider[s]" from disclosing to third parties without consent the "personally identifiable information" ("PII") of "consumer[s]" who view prerecorded content. 18 U.S.C. §§ 2710(a), (b). Plaintiffs claim that MLBAM violated the VPPA by using a routine software tool called the Facebook pixel (referred to by Plaintiffs as "Meta Pixel") on its website, MLB.com. (Compl. ¶¶ 2–4, 36.) Plaintiffs purport to bring their claim on behalf of a nationwide class. (*Id.* ¶¶ 1, 85–95.)

But Plaintiffs' class allegations must be stricken because their allegations invoke a binding contract that prohibits them. Each Plaintiff alleges that they "ha[ve] continuously maintained [their] subscription[s]" to MLB.com to this day, or have "on multiple occasions" in the past two years, "used their subscription[s] to request and obtain" videos. (*Id.* ¶¶ 9, 16, 23, 31.) Plaintiffs'

---

[1] https://www.mlb.com/official-information/terms-of-use (last visited Sept. 17, 2024).

**Chicago** 200 South Wacker, 22nd Floor, Chicago, IL 60606
**Dallas** 7557 Rambler Road, Suite 1450, Dallas, TX 75231
**Santa Monica** 100 Wilshire Boulevard, Suite 1760, Santa Monica, CA 90401

goldmanismail.com

September 18, 2024
Page 2

allegations therefore implicate MLBAM's current TOU. Yet that TOU includes a class-action waiver prohibiting Plaintiffs from bringing class allegations based on any claim arising from the use of MLB.com. (TOU §§ 1, 11.) Under New York law, which applies here under the terms of the TOU Plaintiffs invoke, class-action waivers like this one are enforceable so long as they are clear and conspicuous. Indeed, "[c]ourts applying New York law [] have uniformly held that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009). And the class-action waiver here is clear and conspicuous: It is a standalone clause announced repeatedly in the TOU and emphasized with capital letters and bold typeface. (*See* TOU §§ 1, 11.) Because an enforceable contractual waiver clearly precludes Plaintiffs from asserting claims on a class-wide basis, the court should strike Plaintiffs' class allegations under Rule 12(f). *See, e.g., Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (finding class-action waiver "valid and enforceable" and granting motion to strike class allegations).

## Plaintiffs Fail to State a VPPA Claim and Lack Standing

Plaintiffs' VPPA claim also fails on an individual basis under both Rules 12(b)(6) and 12(b)(1). Under Rule 12(b)(6), Plaintiffs must do more than provide "naked assertions devoid of further factual enhancement" or "allegations that are 'merely consistent with' liability" to survive a motion to dismiss. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quotation marks and citation omitted). Likewise, a court should dismiss a complaint that "fail[s] to allege a plausible injury in fact" under Rule 12(b)(1) because such an injury is a prerequisite to have standing to sue in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148–49 (2d Cir. 2011). Plaintiffs' VPPA claim fails to meet these threshold requirements in three ways.

***First,*** Plaintiffs are not "consumer[s]" for purposes of the VPPA. The VPPA's protections apply only to "consumer[s]," defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The statute in turn defines "video tape service provider" as someone who delivers "prerecorded video cassette tapes or similar audio visual materials." *Id*. § 2710(a)(1), (4). Courts across the country, including in this District, have read these two definitions together to mean that plaintiffs must rent, purchase, or subscribe to receive "prerecorded . . . audio visual" "goods or services ***in particular*** from a defendant—not a defendant's goods or services more generally—to qualify as "consumer[s]." *Id.* §§ 2710(a)(1), (4); *see, e.g., Lamb v. Forbes Media LLC*, No. 22-CV-06319-ALC, 2023 WL 6318033, at *12 (S.D.N.Y. Sept. 28, 2023) (dismissing VPPA claim on this basis); *see also Golden v. NBC Universal Media, LLC.*, No. 22 CIV. 9858 (PAE), 2024 WL 4149219, at *5–6 (S.D.N.Y. Sept. 11, 2024) (dismissing VPPA claim with prejudice because Plaintiff did not allege connection between subscription and access to prerecorded content); *Hughes v. Nat'l Football League*, No. 1:22-CV-10743-JLR, 2024 WL 4063740, at *5 (S.D.N.Y. Sept. 5, 2024) (dismissing VPPA claim where plaintiff was not a "consumer" of prerecorded video content specifically). Plaintiffs here do not allege that they purchased a subscription for audio visual goods or services ***in particular***. They instead allege that they subscribed to MLBAM's "website" MLB.com. (Compl. ¶¶ 2, 9, 16, 23, 30, 36.) Courts have made clear that website registrations like Plaintiffs' do not make them consumers under the VPPA unless those registrations enable expanded access to prerecorded videos. *See, e.g., Lamb*, 2023 WL 6318033, at *12 (citing *Carter v. Scripps Networks, LLC, 670*

September 18, 2024
Page 3

F. Supp. 3d 90, 98, 100 (S.D.N.Y. 2023)). Plaintiffs nowhere allege that their website registrations on MLB.com provided such access (nor can they, because they do not). Plaintiffs are thus not consumers protected by the VPPA, and they fail to state a VPPA claim under Rule 12(b)(6).

*Second,* Plaintiffs' complaint fails under both Rules 12(b)(6) and 12(b)(1) because they do not plausibly allege that MLBAM disclosed their data. Where a plaintiff's allegations under the VPPA are merely "consistent with [] liability" but lack supporting facts showing that the challenged disclosures occurred, that plaintiff fails to state a VPPA claim. *See Beagle v. Amazon.com, Inc.*, No. C24-0316JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (quotation marks and citation omitted) (dismissing VPPA claim on this basis). Here, although Plaintiffs' complaint alleges a broad theory of how MLBAM might violate the VPPA based on its use of the Facebook pixel, Plaintiffs assert no factual allegations to show that MLBAM ever disclosed ***their*** data in particular. (*See* Compl. ¶¶ 7–34.) Plaintiffs therefore fail to state a VPPA claim under Rule 12(b)(6). And because Plaintiffs fail to include any facts showing an actionable disclosure, they also lack standing to bring this VPPA claim, meriting dismissal under Rule 12(b)(1). *See Amidax*, 671 F.3d at 148–49.

*Third,* Plaintiffs' complaint fails under Rule 12(b)(6) because they do not allege facts sufficient to show that MLBAM shared their PII with a third party in violation of the VPPA. The VPPA requires PII to "at the very least, identify a ***particular*** person" as having viewed video materials. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). Plaintiffs claim that MLBAM's use of the Facebook pixel resulted in the disclosure of their Facebook ID—a unique numeric identifier tied to a Facebook profile—and their video-viewing information. (Compl. ¶¶ 3–4.) But Plaintiffs' complaint contains no allegations to show that they, personally, would be identified in any supposed transmission of their Facebook ID. Specifically, Plaintiffs plead no facts about their Facebook profiles or what information identifying them those profiles may contain. (*See generally id.* ¶¶ 11, 18, 25, 32.) Courts in the Second Circuit have found that a "VPPA claim fails" where a "complaint says nothing about any personal information on [a] Facebook profile page." *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508 (JMA) (JMW), 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023). Because Plaintiffs' complaint does not allege that their Facebook profiles contain any "personal information," their VPPA claim fails.

For all these reasons, the Court should dismiss Plaintiffs' complaint for failure to state a VPPA claim and lack of standing.

*** 

MLBAM proposes a pre-motion conference date of September 25, 2024, if the Court deems a conference necessary. MLBAM also proposes the following briefing schedule: MLBAM will file its motion and supporting memorandum of law by October 10, 2024; Plaintiffs will file their opposition and answering memorandum by November 12, 2024; and MLBAM will file its reply in support of its motion by November 26, 2024.

Sincerely,

*Raw E. Littman*

September 18, 2024
Page 4


Alan E. Littmann
(*pro hac vice* to be filed)

Cc: Counsel of Record (via ECF)