**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AARON GOLLAND, et al., individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>        v.<br><br>MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P.,<br><br>                    Defendant. | Case No. 1:24-cv-06270-GHW-GWG<br><br><br>**CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS**
**PLAINTIFFS' COMPLAINTS UNDER**
**FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ....................................................................................... 1

BACKGROUND ........................................................................................ 4

I.    Plaintiffs bring nearly identical class-action claims against MLBAM under the VPPA, challenging disclosures allegedly made to Meta and Snapchat. ........... 4

II.    Based on Plaintiffs' own allegations, they agreed to MLBAM's Terms of Use, including a class-action waiver. ................................................................ 7

    a.    Plaintiffs agreed to MLBAM's Terms of Use. ............................. 7

    b.    MLBAM's Terms of Use include a class-action waiver. ......................... 10

III.    Clifford makes limited allegations related to the VPPA's "consumer" definition. ....................................................................................... 12

ARGUMENT ........................................................................................... 12

I.    The Court should strike Plaintiffs' class allegations based on the binding class-action waiver in MLBAM's TOU. .............................................. 13

    a.    Based on their own allegations, Plaintiffs agreed to the class-action waiver in MLBAM's TOU. ..................................................... 13

    b.    The class-action waiver in MLBAM's TOU is valid and enforceable under New York law. ............................................ 15

    c.    Because Plaintiffs waived their right to bring these class actions, the Court should strike their class allegations. ........................... 17

II.    The Court should dismiss both complaints for failure to state a claim and lack of standing. ....................................................................... 20

    a.    Plaintiffs fail to plausibly allege any disclosures related to them. ............. 21

    b.    Plaintiffs fail to plausibly allege disclosures of their "personally identifiable information" based on MLBAM's alleged use of the Meta and Snapchat Pixels. ......................................................... 26

    c.    Clifford does not adequately allege that he is a "consumer" under the VPPA. .......................................................................... 32

CONCLUSION ......................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Alex v. NFL Enters. LLC*,
   2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023) .................................................................... 32, 33

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011) ................................................................................................ 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 21, 22, 24, 29

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
   708 F. Supp. 3d 385 (S.D.N.Y. 2023) .............................................................................. 7, 28

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................................. 20

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015) ................................................................................ 32, 33

*Beagle v. Amazon.com, Inc.*,
   2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ................................................................ 22, 24

*Beardslee v. Inflection Energy, LLC*,
   25 N.Y.3d 150 (2015) .......................................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 20, 25, 29

*Bernardino v. Barnes & Noble Booksell*ers, *Inc.*,
   2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
   *R. & R. adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan.31, 2018) ............... 1, 14, 16, 17

*Camilo v. Uber Techs., Inc.*,
   2018 WL 2464507 (S.D.N.Y. May 31, 2018) ................................................................... 15, 17

*Casler v. W. Irondequoit Sch. Dist.*,
   563 F. Supp. 3d 60 (W.D.N.Y. 2021) ................................................................................ 31

*Castellanos v. Raymours Furniture Co., Inc.*,
   291 F. Supp. 3d 294 (E.D.N.Y. 2018) ........................................................................ 15, 17, 18

*Chen-Oster v. Goldman, Sachs & Co.*,
   877 F. Supp. 2d 113 (S.D.N.Y. 2012) ............................................................................... 17

*Cimillo v. Experian Info. Sols., Inc.*,
   2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023) .................................................................. 14

*Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*,
   205 F.R.D. 148 (S.D.N.Y. 2002) ........................................................ 6

*Conn. Parents Union v. Russell-Tucker*,
   8 F.4th 167 (2d Cir. 2021) ............................................................... 26

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*,
   790 F.3d 411 (2d Cir. 2015)............................................................. 21

*Czarnionka v. Epoch Times Ass'n, Inc.*,
   2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ........................................ 29

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ............................................... 27, 30, 31

*Emilio v. Sprint Spectrum L.P.*,
   68 F. Supp. 3d 509 (S.D.N.Y. 2014)................................................... 17

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................. 15

*Ghanaat v. NumeradeLabs, Inc.*,
   689 F. Supp. 3d 714 (N.D. Cal. 2023) ........................................... 28, 29

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
   635 F. Supp. 3d 238 (S.D.N.Y. 2022)...................................... 17, 19, 20

*Heerde v. Learfield Commc'ns, LLC*,
   2024 WL 3573874 (C.D. Cal. July 19, 2024)................................... 28, 30

*Hughes v. Nat'l Football League*,
   2024 WL 4063740 (S.D.N.Y. Sept. 5, 2024)........................................... 1

*In re Hulu Priv. Litig.*,
   2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ...................................... 27

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016)............................................................... 1

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*,
   309 F.3d 76 (2d Cir. 2002)............................................................... 19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................ 21, 26

*Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*,
   594 U.S. 180 (2021)...................................................................... 31

*Maldonado v. Nat'l Football League*,
    2023 WL 4580417 (S.D.N.Y. July 18, 2023) ............................................ 15

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020)..................................................... 22, 24

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)..................................................... 14, 15

*Mills v. Cap. One, N.A.*,
    2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ...................................... 20

*Morse/Diesel, Inc. v. Trinity Indus., Inc.*,
    67 F.3d 435 (2d Cir. 1995)......................................................... 19

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009)............................................ 15

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)............................................................. 24, 25

*Ranieri v. Bell Atl. Mobile*,
    759 N.Y.S.2d 448 (App. Div. 2003) ............................................... 16

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)...................................................... 13

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015)............................................. 17

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015)...................................... 27, 30, 31

*Salazar v. Nat'l Basketball Ass'n*,
    118 F.4th 533 (2d Cir. 2024) ............................................... passim

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) ................................................... 14

*Smith v. Trinity Broad. of Tex., Inc.*,
    2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ................................. 27, 28

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).............................................................. 26

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)....................................................... 6

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ........................................................... 19

*U1it4Less, Inc. v. FedEx Corp.*,
    2015 WL 3916247 (S.D.N.Y. June 25, 2015) ....................................... 16

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings., LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015) ................................................... 6

*Wilson v. Gateway, Inc.*,
    2014 WL 12704846 (C.D. Cal. Oct. 6, 2014) ...................................... 19

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) ............................... 21, 29, 30, 31

*Zheng v. Live Auctioneers LLC*,
    2021 WL 2043562 (S.D.N.Y. May 21, 2021) ................................ 16, 17

**Statutes**

18 U.S.C. § 2710 ..................................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................ passim

Fed. R. Civ. P. 12(b)(6) ............................................................ passim

Fed. R. Civ. P. 12(f) ................................................................. passim

Fed. R. Civ. P. 23(c)(1)(A) ............................................................ 17

Fed. R. Evid. 201 .......................................................................... 6

# INTRODUCTION

A binding agreement between the parties, and several independent pleading deficiencies, foreclose Plaintiffs' putative class actions under the Video Privacy Protection Act ("VPPA") against Defendant MLB Advanced Media ("MLBAM"). The VPPA is a 1988 statute addressing intentional leaks of videotape-viewing information. It prohibits "video tape service provider[s]" who deliver "prerecorded video cassette tapes or similar audio visual materials" from "knowingly" disclosing "personally identifiable information" that "identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. §§ 2710 (a), (b)(1). The VPPA is a "quite narrow" statute passed before the age of the internet in response to a prominent news story: an exposé published by the *Washington City Paper* after a store clerk leaked a list of 146 films rented by Supreme Court nominee Robert Bork. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278–79, 284 (3d Cir. 2016). Here, Plaintiffs in two related putative class actions—to whom this brief refers collectively as "Plaintiffs" and separately as "the *Henry* Plaintiffs" and "the *Golland* Plaintiffs"—try to stretch the VPPA to implicate MLBAM's alleged use of common website software code. Courts in the Second Circuit and across the country have dismissed cases like this one for failing to plead key VPPA elements and based on binding clauses in contracts between the parties.[1] The result here should be no different.

The VPPA claims cannot proceed as class actions because, based on their own allegations, each Plaintiff agreed to a contract that bars class-wide claims. Plaintiffs' complaints repeatedly

---

[1] *See, e.g.*, *Hughes v. Nat'l Football League*, No. 1:22-CV-10743 (JLR), 2024 WL 4063740, at *1 (S.D.N.Y. Sept. 5, 2024) (dismissing VPPA claim); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017), *R. & R. adopted as modified*, No. 17-CV-04570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (granting motion to compel arbitration of VPPA claim based on binding clause in parties' agreement).

refer to MLBAM's digital properties MLB.tv and MLB.com, and they base their claims on the alleged functionality of and their alleged "subscriptions" to these websites. But both digital properties are governed by a Terms of Use Agreement ("TOU") containing a class-action waiver that prohibits bringing class claims except for purposes of class-wide settlement. New York law, which applies based on the TOU, uniformly holds that class-action waivers like this one are lawful. New York district courts thus routinely enforce such waivers on motions to strike under Federal Rule of Civil Procedure 12(f) where the waiver is clear and conspicuous, and where its scope and effect are transparent. The waiver here is clear and conspicuous: It is a standalone clause announced repeatedly in the TOU and emphasized with capital letters and bold typeface. The scope and effect of the waiver are equally clear: It covers Plaintiffs' VPPA claims because it applies to all claims based on the use of MLB.tv and MLB.com, as the VPPA claims are; its plain meaning is unambiguous under New York law; and its substance is consistent with class-action practice. The Court should thus enforce the waiver and strike Plaintiffs' class allegations under Rule 12(f).

Both sets of VPPA claims also fail altogether under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for several reasons. First, no Plaintiff plausibly alleges that MLBAM disclosed their data. Although they allege a broad theory of how MLBAM might violate the VPPA based on its use of routine software tools known as the Meta Pixel[2] and—according to the *Golland* Plaintiffs—the Snapchat Pixel, Plaintiffs assert no factual allegations to show that MLBAM ever disclosed their data to anyone. Plaintiffs thus fail to state a VPPA claim under Rule 12(b)(6). Their complaints instead amount to requests for an advisory opinion on MLBAM's use of routine

---

[2] Although "Meta Pixel" is the software's current official name, (*see* Meta Pixel Docs, https://developers.facebook.com/docs/meta-pixel/ (last visited Dec. 17, 2024)), it is also sometimes called the "Facebook Pixel."

software tools on its website. And because Plaintiffs fail to include any facts showing an actionable disclosure, they lack standing to bring their VPPA claim, meriting dismissal under Rule 12(b)(1).

Second, Plaintiffs fail to plausibly allege that MLBAM disclosed their "personally identifiable information" under the VPPA. 18 U.S.C. § 2710(a)(3). Plaintiffs assert that MLBAM's use of the Meta Pixel resulted in the sharing of their Facebook IDs ("FIDs")—unique numeric identifiers tied to Facebook profiles. But Plaintiffs fail to allege that the Facebook profiles associated with those FIDs are public. Courts have found allegations about the public nature of a plaintiff's Facebook profile necessary to state a VPPA claim, and for good reason. To qualify as "personally identifiable information," the VPPA requires that information be of the sort that an ordinary person could use to identify someone. Without allegations that Plaintiffs' Facebook profiles are publicly visible,  meaning that they and their contents can be accessed by an ordinary person using their FIDs, Plaintiffs do not plausibly claim that MLBAM disclosed information identifying them as the statute requires. The same logic applies to the *Golland* Plaintiffs' allegations concerning Snapchat and the Snapchat Pixel. The lone *Golland* Plaintiff who alleges having a Snapchat account—Jose Santiago—pleads no facts showing that his Snapchat profile is publicly accessible to an ordinary person or that the any of the information allegedly disclosed by the Snapchat Pixel qualifies as "personally identifiable information." For these reasons as well, Plaintiffs' claims should be dismissed under Rule 12(b)(6).

Third, because one of the two *Henry* Plaintiffs, James Clifford, focuses his individual VPPA allegations on his alleged registration on MLB.com, he fails to plausibly allege that he is a "consumer" for VPPA purposes. The VPPA defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). As the Second Circuit recently made clear, to be  "subscriber[s]" under this definition, plaintiffs must

allege that they provided certain kinds of personal information "in exchange for" a "good[] or service[]" offered by the video tape service provider. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 552–53 (2d Cir. 2024). Clifford fails to satisfy this standard because he does not allege that he received from MLBAM any qualifying "good or service," which courts have defined as a future and recurrent benefit like a magazine or club membership. Unlike the plaintiff in *Salazar* who allegedly provided personal information in exchange for a future and recurrent benefit unavailable to non-subscribers—an NBA newsletter—Clifford merely alleges that he registered for an account on MLBAM's website MLB.com. But MLB.com is a free website, available to the public without any "subscription" whatsoever. And Clifford nowhere alleges that his purported account registration gave him any benefit unavailable to non-registrants. Clifford thus has not pleaded a "consumer" relationship with MLBAM, and his VPPA claim should be dismissed under Rule 12(b)(6) for this reason as well.

In short, the Court should strike Plaintiffs' class allegations because they agreed to a binding class-action waiver and dismiss their individual claims for failure to state a VPPA claim and lack of standing.

## BACKGROUND

I.    **Plaintiffs bring nearly identical class-action claims against MLBAM under the VPPA, challenging disclosures allegedly made to Meta and Snapchat.**

This motion covers two putative class actions under the VPPA that the Court has deemed related and consolidated for dismissal briefing. In February 2024, Henry filed a class-action complaint alleging that MLBAM violated the VPPA by purportedly disclosing information to Meta[3] through its use of a software tool called the Meta Pixel on MLBAM's digital properties

---

[3] In 2021, Facebook, Inc. changed its name to Meta Platforms, Inc. (SEC, Meta Platforms, Inc. Form 8-K (Oct. 28, 2021), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326801/

MLB.tv and MLB.com. (*Henry* ECF No. 1 at 1–2.) Six months later, the *Golland* Plaintiffs filed

their class-action complaint alleging the same legal theory. (*Golland* ECF No. 1.) *Golland* was

deemed related to *Henry* and referred to this Court, and the Court consolidated the cases under

Federal Rule of Civil Procedure 42(a) for purposes of MLBAM's responsive pleadings. (*Henry*

ECF No. 36; *Golland* ECF No. 19.) The Court then granted Plaintiffs' request for leave to amend

their complaints (*Henry* ECF No. 38; *Golland* ECF No. 33), and both sets of Plaintiffs did so.

(*Henry* ECF No. 40 ("*Henry* Compl."); *Golland* ECF No. 34 ("*Golland* Compl.").) In the *Henry*

amended complaint, James Clifford joined Bryan Henry ("Henry") as a named plaintiff. (*Henry*

Compl. at 1, ¶ 14.) And the *Golland* Plaintiffs added allegations concerning the operation of

another software tool, the Snapchat Pixel, on MLB.com and MLB.tv. (*Golland* Compl. ¶ 3; *see id.*

¶ 40 (referring to both MLB.com and MLB.tv).)

　　Aside from these changes and some language adjustments, both complaints still raise the

same legal theory. Both allege that MLBAM violated the VPPA by supposedly disclosing

Plaintiffs' and other putative class members' information without permission through MLBAM's

use of common software tools on its websites. (*Henry* Compl. ¶¶ 1, 56, 57, 61, 62, 68; *Golland*

Compl. ¶¶ 1–4, 72–73.) Plaintiffs specifically allege that two types of information are disclosed to

Meta when the Meta Pixel is operating: (1) information about the video a user viewed or requested;

and (2) the user's FID, a unique numeric identifier of a particular Facebook account. (*See Henry*

Compl. ¶¶ 1, 4–5, 32–33; *Golland* Compl. ¶¶ 3–4.) The *Golland* Plaintiffs make similar allegations

about the Snapchat Pixel, claiming that when it is operating, two types of information are disclosed

to Snapchat: (1) information about the video a user "requested or obtained"; and (2) the user's

---

000132680121000071/fb-20211028.htm.) References in this brief to "Meta" include the time
period when the company's name was "Facebook, Inc."

"persistent" identifier plus the user's phone number or email address. (*Golland* Compl. ¶¶ 103, 105.)

Henry's individual allegations and the *Golland* Plaintiffs' allegations focus on MLB.tv, one of several digital products and services MLBAM offers. (*Henry* Compl. ¶¶ 12–13; *Golland* Compl. ¶¶ 11, 18, 25, 33.) MLB.tv is "The Home of Streaming Baseball," allowing fans to watch their favorite out-of-market baseball teams live from anywhere in the country. (MLB.tv Homepage.)[4] Henry alleges that he "began his digital subscription to MLB.tv [through] the 2023 T-Mobile Tuesdays Promotion and continues to maintain the subscription to this day." (*Henry* Compl. ¶ 12.) The *Golland* Plaintiffs allege that they each began their MLB.tv subscriptions between March 2023 and March 2024 by signing up on the web version of MLB.com (*Golland* Compl. ¶¶ 11, 33 (Golland and Smith)), on the mobile version (*id.* ¶ 18 (Parker)), or through an Apple TV account (*id.* ¶ 25 (Santiago)).

Clifford, the newly added Plaintiff in *Henry*, does not allege subscribing to MLB.tv. Instead, Clifford alleges that he registered for an account on MLB.com on his cell phone at some point before 2021, and he says he "maintains his subscription to this day." (*Henry* Compl. ¶ 14.)

Although Plaintiffs broadly claim their personal information was disclosed to Meta or Snapchat by MLBAM, both complaints omit key details. For example, the paragraphs describing

---

[4] MLB.tv Homepage, https://www.mlb.com/live-stream-games/partners (last visited Dec. 17, 2024). The Court may properly consider publicly available information on MLBAM's website when deciding this motion. In evaluating a motion to strike under Rule 12(f), a court may consider "matters of which judicial notice may be taken under Fed. R. Evid. 201." *Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002). The same is true of a court evaluating a motion to dismiss. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008). And Federal Rule of Evidence 201 allows a court to "take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings., LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quotation marks and citation omitted).

Plaintiffs' alleged activity on MLB.com provide no facts to show that MLBAM made any disclosures about them in particular or any videos they watched. (*See Henry* Compl. ¶¶ 12–15, 54–63; *Golland* Compl. ¶¶ 11, 18, 25, 33.) Indeed, none of the Plaintiffs ever names *any* specific video they watched that was supposedly disclosed. (*See generally Henry* Compl.; *Golland* Compl.) Further, no Plaintiff alleges whether their Facebook or Snapchat profiles are publicly visible or explains how disclosure of their Facebook IDs or Snapchat "identifier" could link to public profiles that identify them. (*See Henry* Compl. ¶¶ 5, 13, 15, 56, 61; *see generally Golland* Compl. ¶¶ 9–38.)

## II.    Based on Plaintiffs' own allegations, they agreed to MLBAM's Terms of Use, including a class-action waiver.

Plaintiffs all allege that they either subscribed to an MLB.tv account or registered for an MLB.com account. (Henry Compl. ¶¶ 12, 14; Golland Compl. ¶¶ 11, 18, 25, 33.) MLBAM's TOU governs the use of both digital properties. (MLBAM TOU § 1 (TOU governs the "Use of the Official Website of Major League Baseball, which encompasses MLB.com . . . [and] MLB.TV").)[5] The TOU contains a standalone class-action waiver that requires VPPA claims to be litigated individually. (*See id.* § 11 (containing "Class Action Waiver" provision).)

### a.    Plaintiffs agreed to MLBAM's Terms of Use.

Henry and the *Golland* Plaintiffs allege that they began their subscriptions to MLB.tv in 2023 or 2024. (*Henry* Compl. ¶ 12; *Golland* Compl. ¶¶ 11, 18, 25, 33.) When these Plaintiffs began their digital subscriptions to MLB.tv, they agreed to MLBAM's TOU. A new user who subscribes

---

[5] MLB.com Terms of Use Agreement, https://www.mlb.com/official-information/terms-of-use (Feb. 6, 2024). The Court may consider the MLB.com website as a whole both because it is publicly available, (*see supra* note 4), and because it is incorporated by reference in Plaintiffs' complaints, *see, e.g.*, *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 708 F. Supp. 3d 385, 397–98 (S.D.N.Y. 2023) (taking judicial notice of document incorporated by reference into complaint).

to MLB.tv is taken to a "Log In" page on MLB.com, where they can sign up for a subscription. (MLB.tv Login Page.)[6] After clicking "Get MLB.tv," a user is taken to a page with several subscription options and can click "Buy Now" to purchase their preferred subscription. (MLB.tv Subscriptions Page.)[7] A user is then taken to a "Login" page on MLB.com, where they can "Sign Up." (MLB.com Login Page.)[8] After clicking "Sign Up," users are taken to a registration page where he must click a button labeled "Sign Up," below which the following text appears: "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (MLB.tv Registration Page;[9] *see also* MLB.tv Login Page ("By clicking Log In, I accept and agree to the MLB.com Terms of Use and Privacy Policy").) Both the TOU and the Privacy Policy appear as clickable hyperlinks—offset by white and blue font—on the login and registration pages:

---

[6] MLB.tv Login Page, https://www.mlb.com/login?campaignCode=mp5&redirectUri=/tv (last visited Dec. 19, 2024).

[7] MLB.tv Subscriptions Page, https://www.mlb.com/live-stream-games/subscribe/offseason?affiliateId=mlbMENUtv (last visited Dec. 19, 2024).

[8] MLB.com Login Page, https://www.mlb.com/login?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D1021207599995110252401000%26campaign%3Dmlbnetwork_atbat_monthly%26flow%3DPURCHASE%26_gl%3D1*dmpily*_gcl_au*OTgwOTM5NzUuMTcyNzI3NTM4MQ..*_ga*NzMyMzA1NTQxLjE3MjcyNzUzODE.*_ga_N8YFCZLYSZ*MTczNDYyODA3OS45LjEuMTczNDYyODg3My4yLjAuMzIzODM0MOTU1&campaignCode=mlbnetwork_atbat_monthly (last visited Dec. 19, 2024).

[9] MLB.tv Registration Page, https://www.mlb.com/registration?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D1021207599995110252401000%26campaign%3Dmlbnetwork_atbat_monthly%26flow%3DPURCHASE%26_gl%3D1*1cy10oi*_gcl_au*OTgwOTM5NzUuMTcyNzI3NTM4MQ..*_ga*NzMyMzA1NTQxLjE3MjcyNzUzODE.*_ga_N8YFCZLYSZ*MTczNDYyODA3OS45LjEuMTczNDYyOTAyNC41OS44wLjMyMzgzNDk1NQ..&campaignCode=mlbnetwork_atbat_monthly (last visited Dec. 19, 2024).




(MLB.tv Login Page; MLB.tv Registration Page.)

Clifford alleges that he registered for an account on MLB.com, which provides virtually identical disclosures. (*Henry* Compl. ¶¶ 15, 32–37.) To register for accounts, new users are taken to a "Log In" page on MLB.com, where they can "Sign up." (MLB.com Login Page.)[10] After clicking "Sign up," users are taken to a registration page. (MLB.com Registration Page.)[11] To

---

[10] MLB.com Login Page, https://www.mlb.com/login?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D100107599999910222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA2NjMyODQy&campaignCode= (last visited Dec. 19, 2024).

[11] MLB.com Registration Page, https://www.mlb.com/registration?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D100110759999910222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA2NjMyODQy&camp

create an MLB.com account, the user must click the button labeled "Register," below which the following text appears: "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (*See id.*) Here, too, both MLBAM's TOU and Privacy Policy appear as clickable hyperlinks—offset by blue font—on the login and registration pages:

 

(MLB.com Login Page; MLB.com Registration Page.)

**b.    MLBAM's Terms of Use include a class-action waiver.**

The operative TOU for both MLB.tv and MLB.com is MLBAM's current TOU. (MLBAM TOU ("LAST UPDATED: FEBRUARY 6, 2024").) The allegations in both complaints implicate

aignCode= (last visited Dec. 19, 2024).

this TOU. Three *Golland* Plaintiffs allege that they "ha[ve] continuously maintained [their] subscription[s]" to MLB.tv to this day (*Golland* Compl. ¶¶ 11, 18, 25), and all four allege watching videos on MLB.com on multiple occasions in the past two years (*id.* ¶¶ 12, 19, 28, 34). Henry similarly alleges that he "continues to maintain [his MLB.tv] subscription to this day" and that he has "requested, obtained, and viewed Video Media via MLB.tv's website" "[f]rom 2023 to the present." (*Henry* Compl. ¶¶ 12, 56.) Clifford alleges that he has "requested, obtained, and viewed prerecorded Video Media via MLB.com's website and App" "[f]rom at least 2021 to the present." (Henry Compl. ¶ 61.) And the *Henry* Plaintiffs rely on the TOU to establish that venue is proper in this District. (Id. ¶ 11.) All Plaintiffs also bring their suits under the current TOU because it contains an exception allowing VPPA claims to be brought in court rather than arbitration. (*See* MLBAM TOU § 11.1 (defining "Non-Arbitrable Claims" to include "claims under the [VPPA]").)

MLBAM's operative TOU contains a standalone class-action waiver provision. The TOU's Table of Contents notes the class-action waiver in a bolded heading for the "Dispute Resolution" section. (*Id.*, Table of Contents.) The Introduction to the TOU also discloses the class-action waiver, explaining that "[t]his Agreement contains a . . . class action waiver" that "affect[s] your legal rights." (*Id.*, Introduction.) Section 11 of the TOU further declares a class-action waiver in bolded, capital letters: "**11. DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER)**." (*Id.* § 11.) Yet another bolded, standalone heading announces a "**Class Action Waiver**," and the provision itself is written in all capital letters. (*Id.*) The provision reads in full:

> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. YOU AND MLB AGREE TO WAIVE ANY RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN

ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.

(*Id.*)

## III.    Clifford makes limited allegations related to the VPPA's "consumer" definition.

Clifford, the new Plaintiff in *Henry*, makes minimal allegations related to the "consumer" definition in the VPPA. As discussed below, the VPPA defines a "consumer" whose "personally identifiable information" it protects as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1), (3). Clifford does not allege that he is a consumer for purposes of this definition based on any video rentals or purchases. (*See Henry* Compl. ¶¶ 14, 59–63.) Instead, he alleges that he "became a digital subscriber of MLB.com by providing, among other information, his name, email address, IP address . . . , and any cookies associated with his device. (*Id.* ¶ 59.) Clifford alleges that "[a]s part of his subscription, he receive[d] emails and other digital content from MLB.com," and that "MLB.com grant[ed] Plaintiff Clifford access to view prerecorded video and media content." (*Id.* ¶¶ 59, 60.) As publicly available information shows, however, MLB.com is a free website.[12] Its video and other content is freely available to the public with or without registration. (*See* MLB.com Homepage.)

ARGUMENT

The Court should strike Plaintiffs' class allegations because they waived their right to bring them. Beyond their class allegations, the Court should dismiss Plaintiffs' VPPA claims because they have not sufficiently pleaded key elements and because they lack standing.

---

[12] MLB.com Homepage, https://www.mlb.com/ (last visited Dec. 17, 2024). The Court may consider the MLB.com website because it is publicly available and incorporated in Plaintiffs' complaints. (*See supra* notes 4–5.)

I.    **The Court should strike Plaintiffs' class allegations based on the binding class-action waiver in MLBAM's TOU.**

Plaintiffs cannot maintain their class claims against MLBAM because MLBAM's TOU prohibits it. Plaintiffs' own allegations show that they agreed to the TOU, which contains clear and conspicuous language barring them from bringing class-action lawsuits except for purposes of settlement. New York courts routinely enforce class-action waivers, finding that they are not unconscionable and do not violate public policy. And waiving class procedures but retaining class-wide settlement, as the TOU does, is consistent with ordinary class-action practice. Because the parties' binding contract precludes Plaintiffs' class claims, the Court should strike those claims under Rule 12(f).

   a.    **Based on their own allegations, Plaintiffs agreed to the class-action waiver in MLBAM's TOU.**

According to Plaintiffs' complaints, they agreed to MLBAM's TOU. They allege that they registered for and maintained accounts on MLB.tv or MLB.com, and they used those accounts to watch videos. (*See supra* at 7–10; *Henry* Compl. ¶¶ 12, 47; *Golland* Compl. ¶¶ 11, 18, 25, 33.) When users register for MLB.tv or MLB.com accounts, as Plaintiffs say they did here, they agree electronically to—and become contractually bound by—the TOU. (*Supra* at 7–11.) And by allegedly maintaining these subscriptions, Plaintiffs continue to be subject to the TOU, including its class-action waiver. (*Id.*; MLBAM TOU § 11.)

The electronic click Plaintiffs made when they allegedly subscribed to MLBAM's digital properties sufficed to agree to the TOU under New York law. New York law applies here under the TOU, which states in a choice-of-law provision that "the laws of the State of New York" govern all claims "arising out of or related to" the "use of any MLB Digital Property." (MLBAM TOU § 12.) Under New York law, courts examine online agreements using "standard contract doctrine," looking at whether there was an offer, acceptance, and manifestation of mutual agreement.

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). And "[c]ourts around the country have recognized that an electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (cleaned up) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016)). To determine whether a reasonable user has notice that their click would signify assent to the online agreement, courts applying New York law look to the formatting of the webpage, including whether:

1. "the screen was ***uncluttered***;"

2. "the text alerting the user to the existence of other terms of use appeared ***directly below*** the registration button;"

3. "the hyperlink to the terms of use also was easily located under the registration button ***without scrolling***;"

4. "the text alerting the user to the other terms of use was ***clear and obvious by virtue of its font and color***;"

5. "the text itself was a 'clear prompt' or suggestion to read the terms insofar as it stated '***by creating an account, you agree to the Terms of Service***'"; and

6. "the notice to the terms of use was ***temporally connected*** to an action by the user, meaning that the terms were provided simultaneous to the customer action."

*Bernardino*, 2017 WL 7309893, at *9 (emphases added) (internal alteration omitted) (quoting *Meyer*, 868 F.3d at 78–79); *see also Cimillo v. Experian Info. Sols., Inc.*, No. 21 CV 9132 (VB), 2023 WL 2473403, at *6 (S.D.N.Y. Mar. 13, 2023) (enforcing online TOU based on formatting analysis).

Each of the six factors listed in *Bernardino*, numbered above, is present in MLBAM's signup process. When registering for their alleged MLB.tv or MLB.com subscription, each Plaintiff was presented with (1) a clear, ***uncluttered*** signup form. (*See* MLB.tv Registration Page;

14

MLB.com Registration Page.) (2) ***Directly below*** the "Sign Up" button and (3) visible ***without scrolling***, (4) ***in blue font denoting hyperlinks***, the signup prompt stated, (5) "***I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy***." (MLB.tv Registration Page; *see* MLB.com Registration Page (identical language).) And notice of the TOU was (6) ***temporally connected*** to the signup by requiring the user to click to complete the signup process. Through this process, "a reasonably prudent smartphone [or computer] user would understand that the terms were connected to the creation of a user account." *Meyer*, 868 F.3d at 78. Indeed, courts in this District have found that it "was enough" for contract formation for a plaintiff to be "informed of the consequences of his assenting click and . . . shown, immediately below, where to click to understand those consequences." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839–40 (S.D.N.Y. 2012); *see also Maldonado v. Nat'l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417, at *3 (S.D.N.Y. July 18, 2023) (enforcing arbitration clause in TOU that plaintiffs clicked to confirm assent to when registering online accounts). That is precisely what MLBAM's signup process did. Based on their own allegations, Plaintiffs thus agreed to MLBAM's TOU and its class-action waiver.

      **b.**     **The class-action waiver in MLBAM's TOU is valid and enforceable under New York law.**

New York courts routinely uphold class-action waivers like the one in MLBAM's TOU. *See, e.g.*, *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (finding class-action waiver "valid and enforceable" and granting motion to strike class allegations); *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (enforcing class-action waiver and striking class allegations). Indeed, "[c]ourts applying New York law . . . have ***uniformly held*** that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (emphasis

added). Nor is "a contractual proscription against class actions . . . violative of public policy" under New York law. *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003). And nothing in the VPPA itself prohibits enforcing class-action waivers like MLBAM's. *See generally* 18 U.S.C. § 2710 *et seq.*; *see also U1it4Less, Inc. v. FedEx Corp.*, No. 11-CV-1713 KBF, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015) (examining whether class-action waiver is prohibited by the relevant statutory scheme).

This means MLBAM's class-action waiver is valid and enforceable under New York law so long as the provision itself is formatted to be clear and conspicuous to a reasonable user. For example, in *Zheng v. Live Auctioneers LLC*, the court enforced an arbitration provision in an online agreement that "was given its own section with a bolded and numbered heading," with font that "was not smaller than any of the other text" of the relevant agreement. No. 20-CV-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021). And in *Bernardino*, a bolded header for the "Dispute Resolution" section made it conspicuous enough even though a user had to scroll down the agreement webpage to read it. 2017 WL 7309893, at *10.

The class-action waiver provision here is clear and conspicuous. The phrase "class-action waiver" first appears in bolded text in MLBAM's TOU's Table of Contents—the first thing a user sees after clicking to view the TOU. The Introduction of the TOU also discloses the class-action waiver upfront and explains that it may "affect your legal rights." (MLBAM TOU, Introduction.) By clicking on the hyperlink in the Table of Contents or scrolling down the TOU webpage, a user looking at the TOU then sees "**CLASS ACTION WAIVER**" in bold font and all capital letters in the Section 11 header. (*Id.* § 11.) Scrolling further down, "**Class Action Waiver**" appears in bolded font again as the header for the waiver provision, which in turn is written in all capital letters. (*Id.*) The bolding, use of capital letters, and formatting here make the provision conspicuous

under New York law. *See, e.g.*, *Zheng*, 2021 WL 2043562, at *5 (bolded and numbered heading sufficiently conspicuous); *Bernardino*, 2017 WL 7309893, at *10–11 (bolded heading sufficiently conspicuous).

In sum, MLBAM's class-action waiver binds Plaintiffs: It is part of a valid online agreement that is enforceable under New York law.

### c. Because Plaintiffs waived their right to bring these class actions, the Court should strike their class allegations.

Because Plaintiffs are bound by the valid class-action waiver in their contract with MLBAM, the Court should strike their class allegations. Rule 12(f) allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter . . . on [a] motion made by a party." In turn, Rule 23 allows courts to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (alteration in original) (quoting Fed. R. Civ. P. 23(c)(1)(A)).

Together, these two rules allow courts to strike class allegations early in a case. So long as the motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion," a court may grant a motion to strike a plaintiff's class allegations. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)). "[O]ne circumstance where striking the class allegations may be appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022). Courts in the Second Circuit regularly strike class allegations when the validity and enforceability of a class-action waiver is established. *See, e.g.*, *Camilo*, 2018 WL 2464507, at *3; *Castellanos*, 291 F. Supp.

3d at 302. Courts are especially willing to do so where, as here, the waiver is a standalone clause that applies in litigation, rather than a provision contained in an arbitration clause. *See, e.g.*, *Castellanos*, 291 F. Supp. 3d at 302 (striking class allegations based on class-action waiver that explicitly applied in litigation or arbitration).

The standalone class-action waiver here precludes Plaintiffs' putative class actions. The class-action waiver in MLBAM's TOU applies to "any proceeding" involving MLBAM's digital properties, "whether in arbitration or in litigation." (MLBAM TOU § 11, Class Action Waiver.) These proceedings all must "be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action," except that "the parties retain the right to participate in a class-wide settlement." (*Id.*) Plaintiffs allege that their VPPA claims arise from use of MLB.tv or MLB.com, both subject to the TOU. (*See Henry* Compl. ¶¶ 13, 15, 54, 59 (referring to registrations on MLB.tv and MLB.com); *Golland* Compl. ¶¶ 11, 18, 25, 33 (referring to MLB.tv registrations); the TOU § 1 (defining MLB.tv and MLB.com as "MLB Digital Properties").) The parties here have not agreed to settle on a class-wide basis—the sole exception to the TOU's prohibition on class actions. (*See* MLBAM TOU § 11.) The plain language of the provision thus makes clear that Plaintiffs may not bring their VPPA claims as putative class actions.

Nor does the TOU's class-wide settlement exception make its class-action waiver for all other purposes ambiguous, as Henry has argued. (*See Henry* Opp'n to MLBAM Mot. to Dismiss at 8–15, *Henry* ECF No. 29.) The TOU sets the class-wide settlement exception apart in a "notwithstanding" clause: "Notwithstanding the foregoing, the parties retain the right to participate in a class-wide settlement." (MLBAM TOU § 11.) This provision is clear as a matter of plain English, and "under New York law, clauses similar to the phrase 'notwithstanding any other

provision' trump conflicting contract terms" without creating ambiguity. *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015) (cleaned up) (citations omitted); *see also Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 438–39 (2d Cir. 1995) (applying New York law and holding that a "notwithstanding" clause eliminated any "tension" among seemingly conflicting terms). In other words, rather than introducing ambiguity, the "notwithstanding" clause in MLBAM's TOU "by its terms overrides" any purportedly "inconsistent language" "because it trumps all other relevant provisions." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 91 (2d Cir. 2002). The class-wide settlement exception takes priority over the waiver, permitting the parties to engage in class procedures for settlement purposes. (See MLBAM TOU § 11.) Because the meaning of the class-action waiver is clear, there is no reason to delay enforcing it. *See Haymount*, 635 F. Supp. 3d at 240–41 (striking class allegations is proper when an enforceable class-action waiver applies).

The plain meaning of the class-action waiver is also consistent with routine class-action practice because parties may, and regularly do, agree to class-wide settlements where class-action waivers are present. Such waivers are common in TOUs in conjunction with arbitration agreements.[13] And courts approve—and affirm the approval of—class-wide settlements where contracts contain class-action waivers, including when defendants actively try to enforce those waivers. *See, e.g.*, *Tennille v. W. Union Co.*, 785 F.3d 422, 431–32 (10th Cir. 2015) (affirming approval of class-wide settlement reached during the pendency of defendant's appeal from ruling that arbitration agreement including a class-action waiver was unenforceable); *Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2014 WL 12704846, at *2–3 (C.D. Cal. Oct. 6, 2014)

---

[13] *See, e.g.*, https://www.nba.com/termsofuse (Feb. 20, 2023) (National Basketball Association); https://www.nhl.com/info/terms-of-service (Mar. 8, 2023) (National Hockey League); https://www.nfl.com/legal/terms/ (May 16, 2024) (National Football League).

(approving class-wide settlement reached during pendency of appeal from order compelling arbitration and enforcing class-action waiver).

Indeed, courts regularly cite the risk that a defendant could enforce a class-action waiver as a reason to approve class-wide settlements. In *Mills v. Capital One, N.A.*, for example, the court explained that a proposed settlement provided good value to the class because "a substantial number of class members signed releases of their state law claims and class/collective action waivers," and thus "[s]ettlement eliminate[d] the[] uncertainties and the risks resulting from the releases and waivers." No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015) (internal citation omitted). Cases like these demonstrate that parties can waive some class procedures while preserving others, which is precisely what MLBAM's TOU does.

By its plain terms, the class-action waiver prohibits Plaintiffs from maintaining class actions against MLBAM except for purposes of class-wide settlement, which the parties do not seek here. And the TOU's class-action waiver is both unambiguous and consistent with class-action practice. The Court should therefore grant MLBAM's motion to strike Plaintiffs' class allegations under Rule 12(f). *See Haymount*, 635 F. Supp. 3d at 240–41.

## II.    The Court should dismiss both complaints for failure to state a claim and lack of standing.

Even on an individual basis, Plaintiffs fail to state a claim under the VPPA. "To survive dismissal" under Rule 12(b)(6), "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While courts "accept[] as true all well-pled factual allegations" under this standard, they "do[] not credit 'mere conclusory statements' or 'threadbare

recitals of the elements of a cause of action.'" *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 88 (S.D.N.Y. 2022) (cleaned up) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, Plaintiffs' complaints lack any factual allegations to show that they suffered cognizable injuries at all. "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction" if "the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (cleaned up). A plaintiff lacks constitutional standing to sue in federal court if he fails to show that he incurred an "injury in fact" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). A complaint that "fail[s] to allege a plausible injury in fact" should be dismissed under Rule 12(b)(1). *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148–49 (2d Cir. 2011).

Plaintiffs fail to meet Rule 12(b)(6) or 12(b)(1) standards, in ways that are both shared among and unique to their complaints. First, no Plaintiff alleges facts showing that MLBAM made any improper disclosure relating to ***them*** in particular. They include only conclusory statements about how MLBAM's website works generally and therefore fail to allege an injury sufficient to give them standing to bring this lawsuit—let alone to state a VPPA claim. Further, Plaintiffs fail to allege that their "personally identifiable information" was shared with any third party. 18 U.S.C. § 2710(a)(3). Separately, Clifford alleges insufficient facts to establish that he is a "consumer" under the VPPA. 18 U.S.C. § 2710(a)(1).

a.    **Plaintiffs fail to plausibly allege any disclosures related to them.**

Plaintiffs' VPPA claims fail because neither complaint alleges an actionable disclosure of Plaintiffs' information. Unlike the Judge Bork situation which led to passing the VPPA, Plaintiffs fail to point to ***any disclosure*** of their personal information by anyone, or to anyone. Rather, their complaints allege a theory (incomplete, at best) about how MLBAM's digital properties and the

Meta and Snapchat Pixels work and ask this Court to issue what would amount to an advisory opinion that—if true—their theory supports a VPPA class action. These allegations do not meet Rule 12(b)(6) pleading requirements or standing requirements under Rule 12(b)(1).

**Rule 12(b)(6).** Plaintiffs fail to state a VPPA claim on an individual basis because their complaints lack any factual allegations showing that MLBAM disclosed their data. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer . . . ." 18 U.S.C. § 2710(b)(1). So, to state a VPPA claim against MLBAM, Plaintiffs must allege facts sufficient to show that MLBAM knowingly disclosed "personally identifiable information" ("PII") "concerning" them. *Id.* Plaintiffs have failed to allege such facts.

Indeed, the Rule 12(b)(6) standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A plaintiff must do more than provide "naked assertions devoid of further factual enhancement" or "allegations that are merely consistent with liability" to survive a motion to dismiss. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). In the VPPA context, this means that where plaintiffs' VPPA allegations are merely "consistent with . . . liability" but lack supporting facts showing that the challenged disclosures occurred, their VPPA claim should be dismissed. *Beagle v. Amazon.com, Inc.*, No. C24-0316JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (dismissing VPPA claim on this basis).

Despite the opportunity to amend, both complaints still consist of just the sort of naked assertions and bare recitals of the elements that courts routinely reject as insufficiently pleaded. For example, out of an 82-paragraph complaint, the *Henry* Plaintiffs spend only 14 paragraphs setting forth information related to them or their activity on MLB.tv and MLB.com. (*Henry* Compl.

¶¶ 12–15, 54–63.) And these paragraphs fail to allege the facts necessary to support their claims. Henry alleges that signing up for his MLB.tv subscription required him to provide "his name, address, email address, IP address . . . , and any cookies associated with his device." (*Id.* ¶ 54.) Clifford alleges that registering for an account on MLB.com required him to provide the same information. (*Id.* ¶ 59.) But nowhere do the *Henry* Plaintiffs provide facts to show that MLBAM disclosed any of this information.

The *Golland* Plaintiffs similarly repeat the same seven nearly identical paragraphs setting forth generic information related to them and their purported activity on MLB.com. (*Golland* Compl. ¶¶ 9–15, 16–22, 23–30, 31–38.) In the single paragraph each Plaintiff devotes to purported disclosures, they make the same identical, boilerplate allegations that on multiple occasions at unspecified times, MLBAM "disclosed to Meta [Plaintiff's] FID coupled with the specific title of the" unidentified video that the plaintiff "requested" or "obtained" and an unidentified "URL where he requested access to and obtained the video." (*Id.* ¶¶ 12, 19, 28, 34.) Santiago also alleges that at unspecified times, unidentified information was disclosed to Snapchat. (*Id.* ¶¶ 24, 27–29.) The *Golland* Plaintiffs never provide any facts supporting that their own data was in fact disclosed to Meta or Snapchat.

Instead, all Plaintiffs plead a general theory about how MLB.tv, MLB.com, and routine software tools work. In contrast to the few paragraphs of allegations about the *Henry* Plaintiffs' individual experiences, they spend over 30 paragraphs on allegations about how they believe MLB.tv, MLB.com, and the Meta Pixel function. (*Henry* Compl. ¶¶ 1–8, 23–45, 52.) And while the *Golland* Plaintiffs provide only a few nearly identical paragraphs of allegations about each Plaintiff and their alleged use of MLB.tv, their complaint includes at least 70 paragraphs of allegations quoting articles and FTC reports about the supposed value of consumer data and

describing how they believe MLB.com and the Meta and Snapchat Pixels function to disclose consumer data. (*Golland* Compl. ¶¶ 2–5, 50–115.)

Even assuming the allegations in both complaints to be true, neither the *Henry* nor *Golland* complaints present any facts to show that MLBAM **did** violate the VPPA. Instead, the complaints contain exactly the kinds of allegations rejected by courts as "'merely consistent with' liability," without factual support that could show liability if proven. *Mandala*, 975 F.3d at 207 (quoting *Iqbal*, 556 U.S. at 678); *see also Beagle*, 2024 WL 4028290, at *3 (dismissing VPPA claim where facts supporting alleged disclosures were "merely consistent with" liability (quotation marks and citations omitted)).

By alleging only a general theory unsupported by factual allegations, Plaintiffs ask for an advisory opinion. But federal courts lack the power to issue advisory opinions: Their "judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted).

Plaintiffs request just such a decision based "upon a hypothetical state of facts." Plaintiffs allege that because MLB.tv and MLB.com have routine software tools on them that, according to Plaintiffs, are somehow capable of transmitting information to Meta or Snapchat, MLBAM has violated the VPPA. (*See Henry* Compl. ¶¶ 4, 56, 61, 75, 79, 80; *Golland* Compl. ¶¶ 12, 19, 28, 34, 35, 81, 96–99, 103, 111–115.) Plaintiffs' allegations are analogous to a plaintiff alleging a VPPA claim against Blockbuster by alleging that the office manager at a Blockbuster store is capable of pulling an individual's rental history from a database, writing that history on a notepad kept in the store, putting it in an envelope pulled from Blockbuster's supplies, and sending it to the *New York Times*. In both the complaints and the Blockbuster example, the allegations amount to no more

than theories of how the defendant *might* violate the VPPA. Neither Plaintiffs nor the hypothetical Blockbuster plaintiff have alleged any facts showing that MLBAM or Blockbuster **actually sent** their information. By basing their claims on these general assertions without any factual support, Plaintiffs ask the Court to issue an improper advisory opinion about theoretical—not actual— violations of the VPPA.

Santiago's new Snapchat-based disclosure allegations are also implausible because they are premised on speculation not just about what MLBAM *could* have done, but also what someone at Snapchat *might* have done. Specifically, Santiago alleges that the Snapchat Pixel supposedly installed on MLBAM's digital properties caused the disclosure of (1) his video-viewing information and (2) his Snapchat "identifier" and email address. (*Golland* Compl. ¶ 28.) Santiago then goes on to allege such a disclosure might have enabled someone at Snapchat to identify him using "a free reverse lookup site" to identify his name based on his cell phone number, which this supposed Snapchat employee located from Snapchat's internal records using his Snapchat "identifier" or email address. (*See id.* ¶¶ 5, 28.) In other words, Santiago theorizes that, having received the allegedly disclosed information—which did not in and of itself identify him— someone at Snapchat then **could have** gone through Snapchat's records to look up his information. These Snapchat-based disclosure allegations are too speculative to come close to Rule 12(b)(6)'s plausibility requirement. *See Twombly*, 550 U.S. at 544. Instead, they amount to an impermissible request for an advisory opinion on a "'hypothetical state of facts.'" *Preiser*, 422 U.S. at 401.

**Rule 12(b)(1).** Similarly, because Plaintiffs' complaints lack any factual allegations showing that a disclosure occurred, Plaintiffs have not shown that they suffered any cognizable injury under the VPPA, further precluding their claims. To have standing to sue in federal court, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). If a complaint fails to include facts showing a cognizable injury, that complaint is properly dismissed. *See Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021) (affirming dismissal of complaint under Rule 12(b)(1) for failure to show actual injury). As already described (*see supra* at 7–8), Plaintiffs' complaints lack any facts to show that that their information was actually sent to Meta or Snapchat by MLBAM. They therefore cannot show that they suffered a "'concrete and particularized' and 'actual or imminent'" injury as required for standing under Rule 12(b)(1). *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).[14]

**b.    Plaintiffs fail to plausibly allege disclosures of their "personally identifiable information" based on MLBAM's alleged use of the Meta and Snapchat Pixels.**

Plaintiffs further fail to state a claim under the VPPA because they do not credibly allege that any of their PII was shared with third parties through the Meta or Snapchat Pixels. The VPPA protects against unauthorized disclosures only of information that qualifies as PII, which the statute defines as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Plaintiffs claim that MLBAM shares PII in the form of a "Facebook ID," or "FID," which both complaints define as a unique and persistent series of numbers Facebook assigns to each user profile. (*Henry* Compl. ¶ 42; *Golland* Compl. ¶ 72.) Plaintiffs contend that this numerical sequence can then be linked to a particular Facebook profile. (*See id.*) Santiago, one of the *Golland* Plaintiffs, further asserts that

---

[14] MLBAM makes a different standing argument here than the one rejected by the Second Circuit in *Salazar*. The NBA in that case did not challenge standing based on the failure to allege any facts to show that a disclosure occurred. *See* 118 F.4th at 540–41. Instead, the NBA challenged the concreteness of the plaintiff's alleged privacy-related injury. *See id.*

MLBAM has shared alleged PII in the form of his "persistent account identifier and email address" with Snapchat. (*Golland*. Compl. ¶ 28.)

Plaintiffs do not plausibly allege that they would in fact be identified by the information they say was disclosed to Meta or Snapchat. To begin, because Plaintiffs do not allege that their Facebook or Snapchat profiles are publicly visible, they fail to plausibly claim that an "ordinary person" could identify them by the transmission of their FIDs or Snapchat identifiers as required to allege a disclosure of PII for VPPA purposes. Santiago's Snapchat-based claim fails to allege a disclosure of PII for other reasons as well.

### 1. Plaintiffs fail to allege that their Facebook or Snapchat profiles are publicly accessible.

All Plaintiffs' claims fail because they do not allege that their social-media profiles, which supposedly reveal their identities, are public. The VPPA's definition of PII requires that the information disclosed, "at the very least, identify a ***particular*** person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (citing *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014)). And to qualify as PII, the information disclosed must be the kind of information that an "ordinary person" could use "to identify an individual." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017); *see also Robinson*, 152 F. Supp. 3d at 184 (applying the "ordinary person" standard in this Circuit).

To satisfy this "ordinary person" standard, courts have held that VPPA plaintiffs must allege that their social-media profiles are publicly visible so that an ordinary person could use a disclosed social-media identifier to identify them by finding and looking at those profiles. For example, the court in *Smith v. Trinity Broadcasting of Texas, Inc.*, dismissed a VPPA claim because the plaintiff did not "indicate that her profile [was] public ***and*** contain[ed] any identifying

information or photos." No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (emphasis added). The court in *Heerde v. Learfield Communications, LLC* reached the same conclusion and dismissed a VPPA claim because the plaintiffs did not "identify what information on their Facebook pages, if any, was viewable and could be used to identify them." -- F. Supp. 3d --, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024). Similarly, in *Ghanaat v. Numerade Labs, Inc.*, the court dismissed a VPPA claim where the plaintiff's allegations failed to show that disclosure of her FID would "lead[] to a Facebook page that discloses personal and identifying information about the consumer." 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). Although the *Ghanaat* court did not specifically address whether VPPA plaintiffs need to allege that their Facebook profiles are public, its logic supports that they must. *See id.* Where a Facebook profile is not public, disclosure of an FID would not lead an ordinary person "to a Facebook page that discloses personal and identifying information." *See id.*

The reasoning in *Trinity*, *Heerde*, and *Ghanaat* applies here. No Plaintiff alleges that their Facebook profile is public. (*Henry* Compl. ¶¶ 13, 15; *Golland* Compl. ¶¶ 4, 15, 22, 30, 38.) Nor does Santiago allege that his Snapchat account or username is publicly accessible. (*Golland* Compl. ¶ 27.) Indeed, Snapchat profiles are non-public by default.[15] The absence of allegations about the public accessibility of Plaintiffs' Facebook and Snapchat profiles means that they have

---

[15] *See* Snapchat Support, About Profiles on Snapchat, https://help.snapchat.com/hc/en-us/articles/7012292808596-About-Profiles-on-Snapchat (last visited Dec. 17, 2024). As explained on the Snapchat website, "A Public Profile is totally optional to use," and a user maintains "full control over" the audience for their Snapchat content. (*Id.*) at "Public Profiles." "By default, only 'Friends'" a user has "added on Snapchat can contact" the user or view their Snapchat "Story." (Snapchat Support, Privacy Settings, https://help.snapchat.com/hc/en-us/articles/7012343074580-How-do-I-change-my-privacy-settings-on-Snapchat (last visited Dec. 17, 2024).) The Court may take judicial notice of the information on this website because it is incorporated by reference in the *Golland* Complaint. (*See, e.g.*, *Golland* Compl. ¶¶ 100 n.32, 101 n.33, 103 n.34 (citing and linking to Snapchat.com)); *see Atos IT*, 708 F. Supp. 3d at 397–98 (taking judicial notice of document incorporated by reference into complaint).

not plausibly alleged that an ordinary person could identify them based on the disclosure of their FIDs and Snapchat identifiers. As a result, their VPPA claims should be dismissed.

To be sure, other decisions, including by courts in this District, have found that alleged disclosure of an FID alone satisfies the "ordinary person" standard and have not required additional allegations about a plaintiff's Facebook profile to state a VPPA claim. *See, e.g.*, *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (holding an "FID itself represents a particular individual"). As the *Ghanaat* court acknowledged, "[m]ost, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII." 689 F. Supp. 3d at 720 (footnote omitted).

But the *Ghanaat* court properly declined to follow those other cases when considering a complaint, like Plaintiffs' complaints here, in which plaintiffs fail to allege that their FIDs "le[d] to a Facebook page that discloses personal and identifying information" about them. *Id.* Because such a "complaint does not adequately allege that [plaintiffs'] FIDs result in the sharing of any personal information[,] Plaintiffs [] fail to allege this element of their claim or state an injury" under the VPPA. *Id.*; *see also Iqbal*, 556 U.S. at 678 (a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (alteration in original) (quoting *Twombly*, 550 U.S. at 557)). This Court should find the same.

Nor is it sufficient for Plaintiffs to allege that certain employees at Meta and Snapchat could use the information allegedly disclosed to access Plaintiffs' accounts regardless of whether those accounts are public. Santiago claims, for example, that "Snapchat is able to 'automatically match' an off-Snapchat user with his or her Snapchat account." (*Golland* Compl. ¶ 110.) But courts, including a court in this District, have rejected "recipient-dependent" VPPA claims of this nature. *See, e.g.*, *Triller*, 598 F. Supp. 3d at 91–92. The *Triller* court dismissed a VPPA claim

alleging merely that the third-party recipient could use the information disclosed to identify the plaintiff, rather than alleging that **anyone** could use the information to find her social-media profile and identify her. *See id.* at 92. As the *Triller* court explained, interpreting PII to be "recipient-dependent" "would make little sense" because the VPPA's prohibition on disclosures of PII applies broadly, not just where information is disclosed to a particular third party. *Id.* at 91–92. The Ninth Circuit has likewise affirmed dismissal of a VPPA claim under the "ordinary person" standard where only a specific third party could identify a plaintiff from challenged disclosures. *Eichenberger*, 876 F.3d at 986. And other courts have reasoned that simply because a "sophisticated" party could combine the disclosed information with other information "to identify the plaintiff" does not qualify the disclosed information as PII. *Heerde* 2024 WL 3573874, at *3; *see also Robinson*, 152 F. Supp. 3d at 184 (the fact that a particular recipient might be able to identify a plaintiff "by linking th[e] disclosure with other information" is not enough). This Court should similarly reject any argument that the alleged ability of sophisticated Meta or Snapchat employees to identify Plaintiffs through non-public social-media profiles suffices to state a VPPA claim.

In sum, because Plaintiffs do not plausibly allege that they had public social-media profiles allowing an ordinary person to identify them based on their allegedly disclosed profile information, they cannot state a VPPA claim.

### 2. Santiago does not plausibly allege that data disclosed to Snapchat is "personally identifiable information" for other reasons as well.

In addition to not alleging that his Snapchat profile is public, Santiago's Snapchat allegations fail to show a disclosure of PII for other reasons too. To begin, no court has held that Snapchat "identifiers" constitute PII. PII "identif[ies] a **particular** person—not just an anonymous individual . . . ." *Robinson*, 152 F. Supp. 3d at 179. And unlike Facebook profiles, which Plaintiffs

allege contain an individual's real name (*see Henry* Compl. ¶ 42 n.2), Snapchat profiles usually do not.[16] Instead, Snapchat profiles are private by default,[17] and thus contain no information that can be used to "identify a particular person." *Robinson*, 152 F. Supp. 3d at 179. Content posted on Snapchat is likewise, by default, both private—shared only with individuals approved by the user—and, for photos or videos of the user, temporary, disappearing 24 hours after they have been posted. *See Mahanoy Area Sch. Dist. v. B. L. ex rel. Levy*, 594 U.S. 180, 184–85 (2021); *accord Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp. 3d 60, 63 (W.D.N.Y. 2021) ("Snaps can only be viewed by individuals who subscribe to a user and are not available for viewing by the general public."). Santiago has not alleged any facts to the contrary. Indeed, he never even alleges that his real name is visible on his Snapchat profile, let alone a photo of him or any other potentially identifying information. (*See generally Golland* Compl. ¶¶ 23–30.)

Equally unavailing is Santiago's allegation that the Snapchat Pixel somehow caused disclosure of his email address. He presents no facts to show that his email address contains his name or any other "information that can be used to identify [him]." *Triller*, 598 F. Supp. 3d at 90 (emphasis omitted) (*quoting Eichenberger*, 876 F.3d at 984). Even under Santiago's theory—that someone at Snapchat could identify him based on the Snapchat Pixel's disclosures—the disclosure of his email address is of no moment because he fails to allege that his email address was associated with his Snapchat profile at all. (*Golland* Compl. ¶ 27 (alleging only that "his cellular telephone number was associated with" his Snapchat profile).)

---

[16]  *See* Snapchat Support, About Profiles on Snapchat, https://help.snapchat.com/hc/en-us/articles/7012292808596-About-Profiles-on-Snapchat (last visited Dec. 17, 2024) (explaining contents of a profile, which does not include real name). Judicial notice of this information is appropriate because the Snapchat website is incorporated by reference in the *Golland* Complaint. (*See supra* note 4.)

[17]  (*See supra* note 13); *Robinson*, 152 F. Supp. 3d at 179.

Thus, even if Santiago had alleged that his Snapchat profile is public—and he has not—he still would not have alleged facts supporting that information identifying him was disclosed to Snapchat. His Snapchat-based VPPA claim fails for these reasons too.

### c.    Clifford does not adequately allege that he is a "consumer" under the VPPA.

Clifford's VPPA claim fails for an additional reason under Rule 12(b)(6): He does not qualify as a "consumer" under the VPPA. The VPPA's protections apply only to "consumer[s]," defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Clifford alleges that he qualifies as a "consumer" not because he made any video rentals or purchases, but because he registered for an account on MLB.com. (*Henry* Compl. ¶¶ 14–15, 59–60.) This allegation does not make Clifford a "consumer" under the law in this Circuit.

The Second Circuit recently explained in *Salazar* that to qualify as a "subscriber" for VPPA purposes, plaintiffs must allege a qualifying "exchange[]." 118 F.4th at 551–52. That is, plaintiffs must allege that they provided certain kinds of "personal information" "[i]n return for" a particular "good or service" from a video tape service provider. *Id.* at 552–53. In *Salazar*, for example, the plaintiff allegedly provided certain information in exchange for "receiving periodic NBA-related updates" through an NBA newsletter subscription. *Id.* at 552.

Unlike the plaintiff in *Salazar*, Clifford does not allege that he receives a qualifying "good or service" from MLBAM. Courts in this District have explained that to qualify as a "subscriber" for VPPA purposes, a plaintiff must have received "a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updates." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015); *accord Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y. Sept. 27, 2023). Simply "viewing . . . public content on [a] provider's website is not enough to

qualify as a consumer under the VPPA," for example, because the plaintiff could "decide to never visit the . . . website ever again—and that decision will have zero consequences, costs, or further obligations." *Alex*, 2023 WL 6294260, at *3 (quoting *Austin-Spearman*, 98 F. Supp. 3d at 669).[18]

Here, Clifford does not allege receiving any "future and recurrent benefit" from MLBAM. *See id.* (quotation marks and citation omitted). He instead alleges only that he "create[ed] an MLB.com account which he uses to log in to the MLB.com website and App." (*Henry* Compl. ¶ 60.) Clifford further alleges that "[i]n exchange, MLB.com grants Plaintiff Clifford access to view prerecorded video and media content on Defendant's MLB.com website and app." (*Id.*) But he does not allege that a registration on MLB.com provides a "future and recurrent benefit" by giving him any access to "video and media content" beyond what every other member of the public gets, regardless of registration. Indeed, MLB.com is a free website accessible to the public with or without a subscription. (*Supra* at 7, 11–12.) Because Clifford has not plausibly alleged receiving a qualifying benefit in connection with his MLB.com registration, he is not a "consumer" under the VPPA. His VPPA claim fails for this reason as well.

## CONCLUSION

Because Plaintiffs waived their rights to bring a class action, the Court should strike the class allegations in each of their complaints under Rule 12(f). Further, because Plaintiffs' complaints fail in several ways to state a claim under the VPPA and lack standing, the Court should dismiss their claims under Rules 12(b)(6) and 12(b)(1).

---

[18] Nor does *Salazar* undermine this reasoning. The Second Circuit in that case expressly declined to address whether simply "viewing [] videos on NBA.com" could make someone a subscriber for VPPA purposes. *See* 118 F.4th at n.14.

Dated: December 19, 2024

Respectfully submitted,

By: *S/ Alan E. Littmann*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 19, 2024, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Alan E. Littmann*
Alan E. Littmann
