IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AARON GOLLAND, et al., individually and on behalf of all others similarly situated, | Case No. 1:24-cv-06270-GHW-GWG |
| Plaintiffs, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| MAJOR LEAGUE BASEBALL ADVANCED MEDIA, L.P., |  |
| Defendant. |  |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS PLAINTIFFS' COMPLAINT <u>UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

      I.     The Court should strike Plaintiffs' class allegations because Plaintiffs agreed to the 2024 TOU, in which they waived their right to bring their class-action VPPA claims. ...................................................................... 2

           a.     Plaintiffs agreed to and had ample notice of the 2024 TOU ....................... 3

                  i.     Plaintiffs' signups provided reasonably conspicuous notice of the TOU. ................................................................................. 3

                  ii.    Plaintiffs had reasonable notice of the 2024 TOU. ......................... 9

           b.     The 2024 TOU is not unconscionable and must be enforced. ................... 11

                   i.     The 2024 TOU is not procedurally unconscionable because MLBAM provided Plaintiffs sufficient notice under New York law. ..................................................................................... 12

                  ii.    New York law forecloses Plaintiffs' substantive-unconscionability arguments. ......................................................... 13

           c.     Because Plaintiffs agreed not to bring class claims, the Court should strike their class allegations now .................................................. 16

      II.    The Court should dismiss Plaintiffs' complaint because they fail to state a claim and lack standing. ......................................................................... 18

           a.     Plaintiffs fail to allege disclosures of *their* information. ......................... 18

           b.     Plaintiffs fail to allege that their social-media profiles are publicly visible. ...................................................................................... 20

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Aubrey v. New Sch.*,
  624 F. Supp. 3d 403 (S.D.N.Y. 2022) ....................................................................... 4

*Austin-Spearman v. AMC Network Ent. LLC*,
  98 F. Supp. 3d 662 (S.D.N.Y. 2015) ...................................................................... 20

*Beagle v. Amazon.com, Inc.*,
  2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ...................................................... 19

*Bentivoglio v. Event Cardio Grp., Inc.*,
  2021 WL 736811 (S.D.N.Y. Feb. 24, 2021) ............................................................ 16

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017),
  *R. & R. adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) .............................. 3

*Brennan v. Bally Total Fitness*,
  198 F. Supp. 2d 377 (S.D.N.Y. 2002) ................................................... 11, 12, 13, 14

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) ...................................................................... 16

*Collins v. Pearson Educ., Inc.*,
  721 F. Supp. 3d 274 (S.D.N.Y. 2024) ................................................................. 7, 19

*Daschbach v. Rocket Mortg., LLC*,
  2023 WL 2599955 (D.N.H. Mar. 22, 2023) .............................................................. 6

*Doe #1 v. Coll. Bd.*,
  440 F. Supp. 3d 349 (S.D.N.Y. 2020) ...................................................................... 15

*Donelson v. Ameriprise Fin. Servs., Inc.*,
  999 F.3d 1080 (8th Cir. 2021) ................................................................................. 18

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ............................................................................ 21, 22

*Eisen v. Venulum Ltd.*,
  244 F. Supp. 3d 324 (W.D.N.Y. 2017) ............................................................. 11, 12

*Emilio v. Sprint Spectrum L.P.*,
  68 F. Supp. 3d 509 (S.D.N.Y. 2014) ........................................................................ 16

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................... 4, 8

*Ghanaat v. Numerade Labs, Inc.*,
  689 F. Supp. 3d 714 (N.D. Cal. 2023) ................................................................. 21

*Gillman v. Chase Manhattan Bank, N.A.*,
  73 N.Y.2d 1 (1988) ........................................................................................ 12, 13

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
  635 F. Supp. 3d 238 (S.D.N.Y. 2022) ................................................................. 17

*Heerde v. Learfield Commc'ns, LLC*,
  741 F. Supp. 3d 849 (C.D. Cal. 2024) ............................................................ 21, 23

*Hines v. Overstock.com, Inc.*,
  668 F. Supp. 2d 362 (E.D.N.Y. 2009) ................................................................... 6

*Horton v. Concerns of Police Surivivors, Inc.*,
  878 N.Y.S.2d 793 (App. Div. 2009) ..................................................................... 16

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ............................................................................... 21

*IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*,
  975 F. Supp. 2d 1267 (S.D. Fla. 2013) .................................................................. 6

*King v. Fox*,
  418 F.3d 121 (2d Cir. 2005) ............................................................................... 11

*Lease Fin. Grp., LLC v. Indries*,
  49 Misc. 3d 1219(A) (N.Y. Civ. Ct. 2015) ................................................. 11, 15, 16

*Maldonado v. Nat'l Football League*,
  2023 WL 4580417 (S.D.N.Y. July 18, 2023) ......................................................... 8

*Mayfield v. Asta Funding, Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015) ................................................................... 17

*McLaughlin v. Advanced Commc'ns, Inc.*,
  2010 WL 11626961 (E.D.N.Y. Mar. 25, 2010),
  *R. & R. adopted*, 2010 WL 11626962 (E.D.N.Y. Apr. 15, 2010) ...................... 11, 13

*Metter v. Uber Techs., Inc.*,
  2017 WL 1374579 (N.D. Cal. April 17, 2017) ........................................................ 6

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ........................................................................ 3, 5, 6, 8

*Moore v. Microsoft Corp.*,
  741 N.Y.S.2d 91 (App. Div. 2002) ...................................................................... 13

*Nayal v. HIP Network Servs. IPA, Inc.*,
   620 F. Supp. 2d 566 (S.D.N.Y. 2009) ........................................................... 11

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...................................................................... 6

*Nicholas v. Wayfair Inc.*,
   410 F. Supp. 3d 448 (E.D.N.Y. 2019) ......................................................... 14

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ......................................................................... 8

*Peng v. Uber Techs., Inc.*,
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) ................................................. 9, 10, 11

*Pincaro v. Glassdoor, Inc.*,
   2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ......................................... 9, 10

*Preiser v. Newkirk*,
   422 U.S. 395 (1975) .................................................................................... 19

*Reynolds v. Lifewatch, Inc.*,
   136 F. Supp. 3d 503 (S.D.N.Y. 2015) .................................................... 16, 17

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015) ......................................................... 23

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ....................................................................... 22

*Saliba v. Five Towns Coll.*,
   991 F. Supp. 2d 449 (E.D.N.Y. 2014) ......................................................... 18

*Sgouros v. TransUnion Corp.*,
   2015 WL 507584 (N.D. Ill. Feb. 5, 2015) ..................................................... 6

*Smith v. Trinity Broad. of Tex., Inc.*,
   2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ............................................. 21

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ........................................................................... 6

*Starke v. SquareTrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019) ..................................................................... 5, 8

*State v. Wolowitz*,
   468 N.Y.S.2d 131 (App. Div. 1983) ............................................................ 12

*Sullivan v. All Web Leads, Inc.*,
    2017 WL 2378079 (N.D. Ill. June 1, 2017) ............................................................. 6

*Sullivan v. Study.com LLC*,
    2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019) ........................................................ 17

*Treiber v. Aspen Dental Mgmt., Inc.*,
    635 F. App'x 1 (2d Cir. 2016) ............................................................................... 19

*Tsadilas v. Providian Nat'l Bank*,
    786 N.Y.S.2d 478 (App. Div. 2004) ................................................................ 11, 15

*United States v. Stegemann*,
    701 F. App'x 35 (2d Cir. 2017) ............................................................................. 15

*Valle v. ATM Nat'l, LLC*,
    2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ............................................................ 9

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022) ......................................................... 21, 22, 23

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ............................................................................ 21, 22

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (2d Cir. 2022) ....................................................................................... 7

*Zheng v. Live Auctioneers LLC*,
    2021 WL 2043562 (S.D.N.Y. May 21, 2021) .......................................................... 5

**Statutes**

18 U.S.C. § 2710 .............................................................................................. 18, 23

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................ passim

Fed. R. Civ. P. 12(f) ......................................................................................... 1, 2, 18, 23

Fed. R. Civ. P. 23 ...................................................................................................... 16

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383
    (3d ed.) .................................................................................................................. 18

## INTRODUCTION

Plaintiffs' response to MLB Advanced Media, L.P.'s ("MLBAM's") opening brief (ECF No. 36 ("Mem.")) spends 41 pages attempting to obscure a simple dispute: whether each Plaintiff agreed to MLBAM's 2024 Terms of Use Agreement ("2024 TOU"), including its class-action waiver. They did. Each admits to signing up for one of MLBAM's digital properties in 2023 or 2024, which required them to agree to the TOU. And Plaintiffs' own purported signup evidence confirms that each was presented with an uncluttered screen and clear prompt alerting them to their agreement to the TOU. Plaintiffs Golland and Parker admit to signing up when the 2024 TOU and its class-action waiver were in effect. And Plaintiffs Santiago and Smith, who allege signing up in 2023, received ample notice of the 2024 TOU update to which they agreed by continuing to use MLBAM's digital properties. This is all that is required under New York law, which routinely finds contracts formed through online clicks, and updated terms agreed to by continued use, where reasonably conspicuous notice is provided.

Nor is the 2024 TOU's class-action waiver unconscionable. New York law requires Plaintiffs to establish both procedural and substantive unconscionability to avoid the effect of the parties' contract. Plaintiffs cannot show procedural unconscionability because they were not pressured into a contract, distinguishing this case from the employment and property cases they cite. And their substantive-unconscionability arguments are foreclosed by New York law, which uniformly enforces class-action waivers like the 2024 TOU's. Plaintiffs fail to point to a single case finding such a waiver unconscionable. Because Plaintiffs' class allegations are clearly barred by an enforceable class-action waiver, the Court should strike them under Rule 12(f).

Plaintiffs also fail to refute MLBAM's arguments for dismissing their individual VPPA claims under Rules 12(b)(6) and 12(b)(1). They do not cite a single case supporting that they pleaded a qualifying "disclosure" under the VPPA. To the contrary, the complaint's lack of factual

allegations showing a disclosure of ***Plaintiffs' own*** data means they not only fail to state a VPPA claim but also lack Article III standing. Plaintiffs also fail to plead that their Facebook and Snapchat profiles contain publicly visible information. As multiple courts have held, this is a fatal pleading failure. It means Plaintiffs have not plausibly pleaded that the numeric identifiers tied to their Facebook and Snapchat profiles, which Plaintiffs allege were disclosed, would identify ***them***. This is required for a disclosure of these identifiers to be "personally identifiable information" under the VPPA. Finally, Plaintiffs ignore MLBAM's key point about Santiago's Snapchat-based claim: that his theory of recovery, which hinges on Snapchat employees searching out Santiago's information, has been rightly rejected by multiple courts. As these courts have found, a recipient-dependent definition of "personally identifiable information" does not comport with the VPPA. For all these reasons, Plaintiffs' VPPA claims fail under Rules 12(b)(6) and 12(b)(1).

## ARGUMENT

**I.    The Court should strike Plaintiffs' class allegations because Plaintiffs agreed to the 2024 TOU, in which they waived their right to bring their class-action VPPA claims.**

The Court should strike Plaintiffs' class allegations under Rule 12(f) because the class-action waiver in the 2024 TOU prohibits Plaintiffs from bringing their class claims. (*See* Mem. at 13–19.) Plaintiffs do not dispute that if the 2024 TOU applies to them, then the class-action waiver bars class VPPA claims like theirs. (*See generally* ECF No. 38 ("Opp'n") at 9–28.) Instead, Plaintiffs hope to postpone or prevent a decision on the effect of the waiver by asserting that: (a) MLBAM has not shown that they agreed to the 2024 TOU; (b) if they did agree, the 2024 TOU is unconscionable and thus unenforceable; and (c) MLBAM's motion is premature. (*Id.* at 9.) All three arguments fail.

### a.     Plaintiffs agreed to and had ample notice of the 2024 TOU.

Plaintiffs do not contest that New York law applies here, or that courts applying New York law routinely find that users assent to online TOUs. (*See* Opp'n at 9–10.) And by bringing this action in court, in the forum specified by the 2024 TOU, rather than in arbitration or another judicial forum, Plaintiffs implicitly invoke the 2024 TOU. (*See* Mem. at 13–15.) Yet Plaintiffs now assert that they never formed a contract with MLBAM, or alternatively, that they were inadequately notified of the changes in the 2024 TOU. Both arguments are meritless.

### i.     Plaintiffs' signups provided reasonably conspicuous notice of the TOU.

Plaintiffs do not dispute that, under New York law, "an electronic 'click' can suffice to signify the acceptance of a contract" if "the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." (Mem. at 14 (cleaned up) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)); *see* Opp'n at 9–10 (citing same case).) To determine if a TOU linked on a webpage is reasonably conspicuous, courts consider the formatting of the webpage, including whether: the screen was uncluttered; the link to the TOU was easily located and obvious based on text and color; the text clearly explained that creating an account constituted agreement to the TOU; and the notice of the TOU was temporally connected to the user's signup. (Mem. at 14 (citing *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017), *R. & R. adopted as modified*, No. 17-CV-04570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018)).)

Under these standards, Plaintiffs' claims about their MLB.tv and MLB.com accounts only reinforce that each agreed to MLBAM's TOU in 2023 or 2024. (*See* Mem. at 7–10.)

**Golland's signup**. Golland does not argue that his signup differed from the description in MLBAM's opening brief, (Opp'n at 9–11), nor could he because he alleges subscribing to MLB.tv through MLBAM's website after the 2024 TOU went into effect. (ECF No. 34 ("Compl.") ¶ 11.)

3

**Santiago's AppleTV signup**. Santiago says he signed up for MLB.tv through AppleTV on a smart television in 2023,[1] and he includes blurry photos of a television screen to depict what he supposedly saw. (*See* Opp'n, Ex. B, Jackson Decl., ECF No. 38-2, Ex. 1; Compl. ¶ 25.) But assuming these photos accurately depict Santiago's signup,[2] they show a signup page that satisfies New York standards for contract formation. (*See* Mem. at 14–15; *supra* at 3.) The screen is uncluttered, with the phrase "By clicking Create Account, I accept and agree to the MLB.com Terms of Use and Privacy Policy" immediately below the "Create Account" button. (Jackson Decl., Ex. 1 at 4.) This language appears in font similar in size to other font on the screen. (*See id.*) There is no hyperlink to MLBAM's TOU, and thus, it is not offset in contrasting font, (*see* Mem. at 13–14), but this makes sense because televisions are not normally used to access hyperlinks. Further, the text notes that the "Terms of Use" are on MLB.com, (*see* Jackson Decl., Ex. 1 at 4), and courts applying New York law routinely uphold agreements like this, where "the consumer is prompted to examine terms of sale that are located somewhere else," *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012). Thus, Santiago's alleged signup meets New York law

---

[1] The applicable TOU at the time of Santiago's and Smith's signups was the TOU last updated on February 4, 2020 ("2020 TOU"), attached as Exhibit A, (as of Jan. 1, 2023) available at https://web.archive.org/web/20230101193103/https://www.mlb.com/official-information/terms-of-use (retrieved Feb. 28, 2025). The Court can take judicial notice of archived webpages. *See, e.g.*, *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022). As described below, both Santiago and Smith received notice of the 2024 TOU. (*See infra* at 9–11.)

[2] It is unclear if these photos show what Santiago says they do. The first page in Exhibit 1 depicts a screen allowing users to "Create an MLB Account" and "Watch the MLB.TV Free Game of the Day." (Jackson Decl., Ex. 1 at 1.) The second page depicts a screen showing two subscription options: "WATCH" (pertaining to MLB.tv, priced at $29.99 per month) and "LISTEN" (pertaining to At Bat Monthly, priced at $3.99 per month). (*Id.* at 2.) The third page then depicts a screen featuring the MLB logo next to the text "At Bat Monthly," with the matching price "$3.99 per month" noted below. (*Id.* at 3.) But Santiago alleges subscribing to MLBAM's "MLB.tv streaming service," not MLBAM's "At Bat Monthly" service. (*See* Compl. ¶ 25; *id.* ¶ 3 n.2 (defining "streaming service" as coterminous with "MLB.tv").) So Santiago's screenshots may not show the signup he alleges.

standards for assent to online TOUs: the relevant text "was itself reasonably conspicuous" such that a "reasonably prudent" person "would have constructive notice of the terms." *Meyer*, 868 F.3d at 78–79.

**Parker's mobile signup**. Parker acknowledges that he signed up for MLB.tv in March 2024, after the 2024 TOU went into effect. (Mem. at 10; Compl. ¶ 18.) He nevertheless asserts that he subscribed to MLB.tv from his mobile device and "was not presented with any terms of use or a privacy policy." (Opp'n, Ex. C ¶ 2.) But Parker's own submissions contradict this assertion. Exhibit 3 shows that Parker's signup prompt said: "By logging in, I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (Jackson Decl., Ex. 3.) Like MLBAM's example TOU signup, (*see* Mem. at 8–10), Parker's signup page features an uncluttered screen, with MLBAM's "Terms of Use" and "Privacy Policy" in blue font denoting hyperlinks just below the "Register" button, connecting it temporally to the signup. (*See* Opp'n at 13–15 (citing Jackson Decl. ¶ 3); *see also* Mem. at 8–10; *supra* at 3.)

Parker contends that this language is not visible without scrolling down slightly, (*see* Jackson Decl. ¶¶ 3–5; Opp'n, Ex. C), but that alone is not problematic. While MLBAM maintains that the TOU link on the MLB.tv signup page is visible without scrolling,[3] (*see* Mem. at 7–10), even if Parker is right, "whether a web user had 'reasonable notice' of contract terms contained in a contract accessible by hyperlink depends on the 'totality of the circumstances.'" *Zheng v. Live Auctioneers LLC*, No. 20-CV-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 296 (2d Cir. 2019)). That Parker

---

[3] For purposes of this motion, MLBAM assumes Plaintiffs' allegations about what they saw to be true, (*see* Jackson Decl. ¶¶ 3–5; Opp'n, Ex. C), but reserves the right to fully address the accuracy of Plaintiffs' allegations, screenshot submissions, and characterizations of MLBAM's digital properties if this case progresses past the pleadings stage.

allegedly had to scroll down just enough to "cause[] the MLB logo to no longer appear at the top of the mobile webpage," (*see* Jackson Decl. ¶ 5), does not counteract all the other factors showing that the relevant text was "reasonably conspicuous." *See Meyer*, 868 F.3d at 79; (Mem. at 13–15).

Parker also relies on distinguishable cases involving confusing formatting not present here. For example, in *Specht v. Netscape Communications Corp.*, the link to the terms of use was far below the button for a user to push, and no statement notified users that they agreed to the terms by clicking the button. 306 F.3d 17, 23–24 (2d Cir. 2002). Here, the notice Parker says he received appears right below the "Register" button and explains, "By logging in, I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (Jackson Decl., Ex. 3.) Parker also cites *Hines v. Overstock.com, Inc.*; that case is equally distinguishable because the defendant did "not explain how a site-user such as Plaintiff is made aware of the Terms and Conditions." 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009). Here, MLBAM's and Plaintiffs' screenshots show how the operative TOU was presented to Parker at signup. (*See* Mem. at 8–10; Jackson Decl., Ex. 3.) The rest of Parker's cases are out of circuit, equally distinguishable,[4] and do nothing to counter what MLBAM has already shown, (*see* Mem. at 13–17): Parker assented to MLBAM's TOU.

**Smith's signups**. Smith alleges that he signed up for MLB.com in 2008 and for MLB.tv in May 2023. (Compl. ¶ 33.) Smith's 2008 signup date is immaterial; as Plaintiffs concede, any

---

[4] *See, e.g.*, *Metter v. Uber Techs., Inc.*, No. 16-CV-06652-RS, 2017 WL 1374579, at *3 (N.D. Cal. April 17, 2017) (notice of TOU was fully obscured during app signup); *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1281–83 (S.D. Fla. 2013) (notice was confusingly worded, not obviously located, and may not have existed at the relevant time); *Daschbach v. Rocket Mortg., LLC*, No. 22-CIV-346-JL, 2023 WL 2599955, at *7 (D.N.H. Mar. 22, 2023) (website did not clearly state that clicking "Next" button accepted TOU, and link to TOU was in light gray font on white background); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (nothing stated signup meant assent); S*ullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *1, 7 (N.D. Ill. June 1, 2017) (notice was in fine print without clear hyperlinks at the bottom of a second screen); *Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *6 (N.D. Ill. Feb. 5, 2015) (nothing stated signup meant assent).

activity before 2022 is outside the statute of limitations for a VPPA claim. (*See* Opp'n at 17 n.4.) And Smith does not dispute that he received sufficient notice of the 2020 TOU that applied in 2023 on subscribing to MLB.tv. (*See* Mem. at 9–10, 14–15.) He also alleges "us[ing] his subscription to Defendant's website to request and obtain prerecorded videos from Defendant" "[o]n multiple occasions during the two years preceding the filing of this action." (Compl. ¶ 34.)[5]

\*     \*     \*

In sum, Plaintiffs' own allegations and screenshots confirm their agreement to MLBAM's TOU in 2023 or 2024 through signup processes that meet New York contract-formation standards. Plaintiffs' Second Circuit cases finding lack of contract formation are factually distinct and do not alter this conclusion:

- In *Collins v. Pearson Education, Inc.*, the defendant failed to show "an arbitration agreement with, or purported class action waiver by, the named plaintiff," or address "whether the class waiver ha[d] effect outside of the arbitration context." 721 F. Supp. 3d 274, 290 (S.D.N.Y. 2024). Here, MLBAM's class-waiver is a standalone TOU provision, and MLBAM has explained how it applies to Plaintiffs. (*See* Mem. at 13–20.)

- The *Zachman v. Hudson Valley Federal Credit Union* court reversed the denial of a motion to compel arbitration where "the record [did] not contain screenshots of the webpage(s) used to register" the plaintiffs. 49 F.4th 95, 104–05 (2d Cir. 2022). Here, both parties have

---

[5] Smith now contends that he "regularly used [his] subscription . . . to watch prerecorded videos" only until "February 5, 2024." (Opp'n, Ex. A, Smith Decl. ¶ 3, ECF No. 38-1.) To the extent that Smith claims that all his activity on MLB.com or MLB.tv predates the TOU's 2024 amendments, his claims belong in arbitration. Only after the 2024 TOU took effect on February 6, 2024 were claims such as these exempted from MLBAM's otherwise applicable and enforceable arbitration provision. (*See* 2024 TOU, § 11; *infra* at 9–11 (discussing notice of updated TOU).)

provided screenshots showing how the registration screens appeared. (*See* Mem. at 7–10 (also explaining that Court may take judicial notice of these screenshots); Opp'n at 11–17.)

- In *Nicosia v. Amazon.com, Inc.*, the Second Circuit, applying Washington state law, "conclude[d] . . . that reasonable minds could disagree" about the sufficiency of a link to a TOU on a cluttered page containing "between fifteen and twenty-five links" and "at least four font sizes and six colors," alongside multiple buttons and advertisements. 834 F.3d 220, 238 (2d Cir. 2016). Similarly, in *Starke v. SquareTrade, Inc.*, the link to the contract was "some of the smallest text in the email and c[ame] after several prompts unrelated" to the contract. 913 F.3d 279, 293 (2d Cir. 2019). These busy screens are a far cry from the uncluttered ones depicted in Plaintiffs' own submissions. (*See* Opp'n at 11–17; Jackson Decl., Exs. 1–3.)

Plaintiffs' signups are much more like those upheld by New York courts in *Fteja v. Facebook, Inc.*, and *Maldonado v. National Football League*. (*See* Mem. at 15.) Plaintiffs say their signups were different than in *Fteja* because the TOU link in that case had "an underline," (*see* Opp'n at 24), but *Fteja* never mandated "an underline" for hyperlinks. 841 F. Supp. 2d at 835. Rather, *Fteja* teaches that there should be "an indication that the phrase is a hyperlink," *id.*; here, that "indication" is the use of contrasting font colors, (*see* Mem. at 9–10, 13–15). Plaintiffs also claim that, unlike in *Maldonado*, Golland and Parker were not presented with the linked TOU "directly under the 'Create An Account'" button. (*See* Opp'n at 24 (quoting *Maldonado v. Nat'l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417, at *3 (S.D.N.Y. July 18, 2023)).) They were, as Plaintiffs' own submissions show. (*See supra* at 3–7.) Plaintiffs thus agreed to MLBAM's "reasonably conspicuous" TOU. *Meyer*, 868 F.3d at 73, 75.

ii.    **Plaintiffs had reasonable notice of the 2024 TOU.**

Plaintiffs are also incorrect that Santiago and Smith, who allegedly signed up in 2023, failed to receive sufficient notice of the TOU's 2024 updates. "Courts applying New York law consistently have held that 'customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.'" *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 51 (E.D.N.Y. 2017) (quoting *Valle v. ATM Nat'l, LLC*, No. 14-CV-7933 KBF, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015)). Like other online agreements, courts look to whether an email or other notice of updated terms provided plaintiffs with "reasonably conspicuous notice" of the updates. *Pincaro v. Glassdoor, Inc.*, No. 16 CIV. 6870 (ER), 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017) (cleaned up). Here, MLBAM provided notice of the updated terms in multiple ways.

***First***, on February 6, 2024, MLBAM emailed users a notice of updates to its Privacy Policy and TOU:



February 06, 2024                                                                View Online

We're writing to let you know about updates to our Privacy Policy and Terms of Use Agreement. Our updated terms can be reviewed at the links below, effective February 6, 2024.

**The changes include:**

> Migration of Minor League Baseball and Minor League Club digital properties to singular policies with Major League Baseball and MLB Club digital properties; and
> Updates to our dispute resolution policies, including, but not limited to, our arbitration procedures.

By continuing to use our services (including our websites and mobile applications) on or after February 6, 2024, you agree to our updated **Privacy Policy** and **Terms of Use Agreement**. If you have any questions, please contact us at **dataprivacy@mlb.com**.

*Note: This is a legal notice, not connected to any subscription you may have to receive marketing or promotional mailings from MLB, any MLB Club, MiLB or any MiLB Club.*

© 2024 MLB Advanced Media, L.P. MLB trademarks and copyrights are used with permission of Major League Baseball. Visit MLB.com. Any other marks used herein are trademarks of their respective owners.

Please review our Privacy Policy.

You (alittmann@goldmanixmail.com) received this service-related message in connection with your MLB.com account. E-mail is MLB.com's primary mode of communication for customer service communications and updates.

Please add info@mail.mlblists.com to your address book to ensure our messages reach your inbox. E-mail is MLB.com's primary communication for service-related communications and updates.

Postal Address: MLB.com, c/o MLB Advanced Media, L.P., 1271 Avenue of the Americas, New York, NY 10020.

9

(Ex. B.) This email explained that "[b]y continuing to use our services (including our websites and mobile applications) on or after February 6, 2024, you agree to our updated Privacy Policy and Terms of Use Agreement." (*Id.*) The email also provided labeled hyperlinks, denoted by blue font, to the Privacy Policy and TOU. (*Id.*)

*Second*, MLB.com has displayed the following website banner since the updates were made:



(Ex. C.)[6] Like the email notice, the banner explains, "The MLB Privacy Policy and Terms of Use Agreement have been updated, effective February 6, 2024, to encompass all MiLB.com and Minor Leage Club digital properties, ***and to update the arbitration and dispute resolution procedures***, among other changes. ***By continuing to use our services, you agree to the updated Privacy Policy and Terms of Use Agreement***." (*Id.* (emphases added).) The Privacy Policy and TOU are also linked with blue font. (*Id.*)

These notices as well as Santiago and Smith's continued use of MLBAM's digital properties, show that they agreed to the 2024 TOU under New York law. For example, in *Pincaro*, the court found plaintiffs were bound by updated terms after they received an email that noted the updates and linked to the new terms using blue font. 2017 WL 4046317, at *6. The court explained "that Plaintiffs are deemed to have assented to these Terms of Use by their continued use of [Defendant's] website, as opposed to requiring some further, affirmative step, does not render these updated terms inapplicable." *Id.* And in *Peng*, the court concluded that Uber drivers agreed

---

[6] MLB.com Homepage (as of Feb. 7, 2024), available at https://web.archive.org/web/20240207235001/https://www.mlb.com/ (retrieved Feb. 24, 2025).

to an updated TOU after they received notice of the TOU—including through a pop-up like MLBAM's banner above—and continued "to use their accounts after receiving the revised terms." 237 F. Supp. 3d at 51 (quotation marks and citations omitted). Likewise, Santiago and Smith agreed to the 2024 updates by allegedly continuing to use MLBAM's digital properties. (*See* Compl. ¶¶ 25, 34, 35 (noting use of MLBAM digital properties on "multiple occasions during the two years preceding the filing of this action").) And Golland and Parker admit to signing up after the 2024 updates. (*Supra* at 3, 5.) Because all Plaintiffs are subject to the TOU's 2024 updates, the class-action waiver in those updates applies to Plaintiffs' claims. (*See* Mem. at 13–17); *see also Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S.2d 478, 480 (App. Div. 2004) (upholding agreement with class-action waiver where "Plaintiff consented to it by failing to opt out and by continuing to use her credit cards" (citation omitted)).

### b.    The 2024 TOU is not unconscionable and must be enforced.

After finding that each Plaintiff agreed to and is bound by the 2024 TOU, the Court should hold that the 2024 TOU is not unconscionable and should enforce it here. Plaintiffs do not, and cannot, dispute that courts applying New York law "have ***uniformly held*** that class action waivers are not unconscionable." (Mem. at 15 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (emphasis added)).) Indeed, ***none*** of the cases Plaintiffs cite even analyzes whether a class-action waiver is unconscionable, let alone finds that one is.[7]

---

[7] These cases instead analyze the enforceability of arbitration clauses, *see Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 339 (W.D.N.Y. 2017); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382–83 (S.D.N.Y. 2002); *McLaughlin v. Advanced Commc'ns, Inc.*, No. CV092311SJFETB, 2010 WL 11626961, at *2 (E.D.N.Y. Mar. 25, 2010), *R. & R. adopted*, No. CV-09-2311(SJF)(ETB), 2010 WL 11626962 (E.D.N.Y. Apr. 15, 2010); a security agreement, *see Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988); lease terms, *see State v. Wolowitz*, 468 N.Y.S.2d 131, 140 (App. Div. 1983); a forum-selection clause, *Lease Fin. Grp., LLC v. Indries*, 49 Misc. 3d 1219(A), at *1 (N.Y. Civ. Ct. 2015); and an attorney's fee agreement, *King v. Fox*, 418 F.3d 121, 134 (2d Cir. 2005).

Yet Plaintiffs maintain that the class-action waiver is unenforceable because it is unconscionable. (*See* Opp'n at 24–27.) Plaintiffs are incorrect.

Under New York law, a court will refuse to enforce a contract only if it is "grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place." *Gillman*, 73 N.Y.2d at 10 (cleaned up). Procedural unconscionability relates to "the contract formation process and the alleged lack of meaningful choice," while substantive unconscionability "looks to the content of the contract, per se." *Wolowitz*, 468 N.Y.S.2d at 145. Plaintiffs concede that they must establish both procedural *and* substantive unconscionability because they do not argue that this is an "exceptional case[]" where substantive unconscionability alone is sufficient. (*See* Opp'n at 24 (quoting *Eisen*, 244 F. Supp. 3d at 342); *id.* at 25–26 (not invoking this narrow exception).) Because the 2024 TOU is neither procedurally nor substantively unconscionable, it is enforceable.

### i.     The 2024 TOU is not procedurally unconscionable because MLBAM provided Plaintiffs sufficient notice under New York law.

On procedural unconscionability, Plaintiffs principally recycle their contract-formation arguments, (*see id.* at 25 (incorporating these arguments "[a]s discussed above")), which fail as explained above, (*see supra* at 3–11). Plaintiffs add that if a party "never received" or had only "a short time to read and digest" a contract, it may be unconscionable, (Opp'n at 25), but neither scenario is true here. Each Plaintiff received sufficient notice of the operative TOU at signup and agreed to be bound by that contract under New York law. (*See supra* at 3–11.) Nor were Plaintiffs under time pressure—they could take as much time as they liked before agreeing to the TOU.

Plaintiffs cite distinguishable cases finding contracts forced on employees unconscionable, (*see* Opp'n at 25), but the events here bear no resemblance. In *Brennan*, a court found that it was procedurally unconscionable to give employees mere minutes to sign a 16-page single-spaced

12

contract under threat of ineligibility for promotion. *See* 198 F. Supp. 2d at 379–80, 383–84. And in *McLaughlin*, it was procedurally unconscionable to require an employee to sign a contract he was not permitted to review. *See* 2010 WL 11626961, at *3. In contrast to contracts sprung on employees, MLBAM "offered a contract that [Plaintiffs] accepted by using [MLB.tv or MLB.com] after having an opportunity to read the [TOU] at leisure." *See Moore v. Microsoft Corp.*, 741 N.Y.S.2d 91, 92 (App. Div. 2002). Under New York law, a contract agreed to under these conditions is enforceable. *See id.* (enforcing the contract).

Finally, Plaintiffs maintain that MLBAM's cases about the placement of the class-action waiver are "unavailing" because they "did not involve class action waivers or directly interpret such waivers." (Opp'n at 25.) But Plaintiffs do not explain why the content of a contractual term is relevant to an argument about its placement within a contract. (*See id.*) And what matters is that the class-action waiver is conspicuous within the TOU, which it was here. (*See* Mem. at 16–17.)

The Court should hold that the 2024 TOU is not procedurally unconscionable because each Plaintiff received notice of and agreed to be bound by that contract.

ii.    **New York law forecloses Plaintiffs' substantive-unconscionability arguments.**

The Court should not reach the issue of substantive unconscionability because the 2024 TOU is not procedurally unconscionable, (*see supra* at 11–13), and Plaintiffs do not argue unconscionability based on the substantive element alone, (*see* Opp'n at 25–26); *Gillman*, 73 N.Y.2d at 10 (requiring a plaintiff to show procedural ***and*** substantive unconscionability). If the Court analyzes this issue, however, it should hold that the 2024 TOU is not substantively unconscionable because New York law upholds all three contract terms that Plaintiffs challenge.

*First*, Plaintiffs selectively quote the 2020 TOU to incorrectly imply that MLBAM could modify its terms without notice to users. (Opp'n at 26.)[8] Plaintiffs quote only part the relevant section, "MLB in its sole discretion may amend this Agreement," (*id.*), which continues: "in which case **we will post the amended Agreement** within the MLB Digital Properties. Your use of the MLB Digital Properties **after such amended Agreement is posted** will constitute acceptance of it by you." (Ex. A, 2020 TOU § 13 (emphases added).) Thus, an amendment applies to users like Plaintiffs, who receive notice of and accept the new terms by continuing to use MLBAM's digital properties. (*See supra* at 9–11.) That requirement distinguishes the TOU here from *Brennan*, where employees could be bound "to a contract they may never have seen." *See* 198 F. Supp. 2d at 384. And in any event, "[t]he unilateral right to modify an agreement, without more, does not render the agreement unenforceable" under New York law. *See Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019). That MLBAM has the right to modify the TOU and have those terms bind users who agree to them does not render any version of its TOU substantively unconscionable.

*Second*, Plaintiffs argue that "gross[] incongru[ity]" between the general waiver of class-action procedures and the exception for class-wide settlement makes the 2024 TOU substantively unconscionable. (Opp'n at 26–27.) This argument is misplaced because it relates to purported ambiguity, not unconscionability. And Plaintiffs cite no case finding substantive unconscionability based on an ambiguous term. (*See id.*) Nor would any ambiguity favor MLBAM because the waiver applies to both parties. (*See* Ex. D, 2024 TOU § 11 (binding "you and MLB" and

---

[8] Plaintiffs do not specify which TOU they are referring to, (*see* Opp'n at 26), and both the 2020 and 2024 TOUs contain this language, (*see* 2020 TOU § 13; 2024 TOU § 13). MLBAM assumes that Plaintiffs mean the 2020 TOU because they argue that they lacked notice of amendments to that contract, but the analysis is identical for the 2024 TOU.

"the parties").)[9] If ambiguity bars a user from "participat[ing] in a class-wide settlement," as Plaintiffs speculate, (*see* Opp'n at 26–27), MLBAM too would be unable to participate. Under New York law, terms that apply equally to both sides, including class-action waivers, are not substantively unconscionable. *See Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 357 (S.D.N.Y. 2020) (upholding class-action waiver on this basis).

Even if ambiguity could theoretically create substantive unconscionability, Plaintiffs fail to show ambiguity in the class-action waiver here. Claimants do not respond to MLBAM's argument that the class-action waiver is unambiguous, (*compare* Mem. at 18–20 (explaining that the "[n]otwithstanding" clause in the class-action waiver resolves, not creates, ambiguity under New York law), *with* Opp'n at 26–27 (no discussion of New York law on contractual ambiguity)), so the Court should "treat[] this perfunctory, undeveloped argument as forfeited," *United States v. Stegemann*, 701 F. App'x 35, 38 (2d Cir. 2017), and decline to analyze ambiguity.

***Finally***, Plaintiffs argue that "the class action waiver, when read in line with the remaining TOU," is so unreasonable that it is unenforceable on its face. (Opp'n at 27.) This argument fails because "a contractual proscription against class actions is neither unconscionable nor violative of public policy" under New York law, *Tsadilas*, 786 N.Y.S.2d at 480 (cleaned up), and Plaintiffs do not explain why this appellate precedent should not apply here, (*see* Opp'n at 27). Their failure to develop an argument on this point constitutes forfeiture. *See Stegemann*, 701 F. App'x at 38.

Forfeiture aside, Plaintiffs' argument fails. They rely solely on *Lease Finance*, but the only similarity to this case is the amount in controversy—$2,600 there, $2,500 per Plaintiff here. (*See* Opp'n at 27.) *Lease Finance* is a case about whether a ***defendant*** can be required to litigate a

---

[9] Available at https://www.mlb.com/official-information/terms-of-use (Feb. 6, 2024); *see also* Mem. at 7 n.5 (noting that the Court can take judicial notice of the 2024 TOU).

small-value claim 2,700 miles from home. *See* 49 Misc. 3d at *1, *6. Here, in contrast, three out-of-state Plaintiffs chose to join with a New York Plaintiff and sue MLBAM in the 2024 TOU's designated forum, at most 700 miles from home. (*See* Compl. ¶¶ 9, 16, 23, 31; Opp'n at 27.) New York law upholds this kind of forum-selection clause. "The parties to an agreement may freely select a forum which will resolve [their] disputes," and Plaintiffs fail to make "the requisite strong showing" to avoid the parties' chosen forum. *See Horton v. Concerns of Police Surivivors, Inc.*, 878 N.Y.S.2d 793, 794 (App. Div. 2009) (cleaned up) (enforcing forum-selection clause requiring New York plaintiff to litigate in Missouri). Additionally, while *Lease Finance* "purported to . . . rul[e] on substantive unconscionability, procedural unconscionability factors were heavily weighed," *see Bentivoglio v. Event Cardio Grp., Inc.*, No. 18-CV-2040 (PKC), 2021 WL 736811, at *6 (S.D.N.Y. Feb. 24, 2021), but there is no procedural unconscionability here, (*see supra* at 11–13).

For these reasons, neither the 2024 TOU nor the class-action waiver is substantively unconscionable. Thus, the Court should enforce the class-action waiver here.

### c.    Because Plaintiffs agreed not to bring class claims, the Court should strike their class allegations now.

After finding that the 2024 TOU's class-action waiver is enforceable, the Court should grant MLBAM's motion to strike. The waiver bars Plaintiffs from bringing their VPPA claims as a class action. Rule 23 instructs courts to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 23(c)(1)(A)). A motion to strike class allegations that "addresses issues separate and apart from the issues that will be decided on a class certification motion" is not premature. *Reynolds v. Lifewatch, Inc.*,

136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (quoting Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)); (*see also* Mem. at 17–18 (citing additional cases)).

Plaintiffs argue that because "motions to strike are generally looked upon with disfavor" and are "generally . . . premature" at the pleading stage, MLBAM's motion should be denied. (Opp'n at 27–28 (quotation marks and citation omitted).) But Plaintiffs' only reason for not enforcing the class-action waiver now is their argument that contract formation has not been established. (*See id.* at 28.) It ***has*** been established, (*supra* at 3–11), leaving Plaintiffs with no argument for denying MLBAM's motion.

The cases Plaintiffs cite confirm that MLBAM's motion to strike is timely. (*See* Opp'n at 27–28.) In *Haymount Urgent Care PC v. GoFund Advance, LLC*, the court denied a motion to strike because contracts may have been "entirely void under New York law," so no "provisions— including the class action waivers—c[ould] be enforced." *See* 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022) (recognizing that if "a contractual waiver clearly precludes" a class action, it may be proper to strike class allegations). But Plaintiffs here have not shown that the TOU is unconscionable or possibly void. (*See supra* at 11–16.) In the other cases, the plaintiffs were not bound by class-action waivers, and the courts held that determining whether ***other*** class members' waivers precluded class certification was premature at the pleading stage. *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 693–97 (S.D.N.Y. 2015); *Sullivan v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 WL 1299966, at *6–7 (S.D.N.Y. Mar. 21, 2019). Unlike in these cases, here Plaintiffs themselves agreed to a class-action waiver, (*see* Mem. at 13–20; *supra* at 3–11), and MLBAM's motion raises an issue "separate and apart" from class certification because MLBAM's ability to enforce the waiver against Plaintiffs is unrelated to whether a different plaintiff could certify a class action. *See Reynolds*, 136 F. Supp. 3d at 512 (quotation omitted).

Plaintiffs give no valid reason to delay striking the class allegations, and failing to do so now "would prejudice [MLBAM] by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1383 (3d ed.)). The Court should strike Plaintiffs' class allegations under Rule 12(f).

## II.    The Court should dismiss Plaintiffs' complaint because they fail to state a claim and lack standing.

### a.    Plaintiffs fail to allege disclosures of *their* information.

Plaintiffs' complaint falls short of Rule 12(b)(6) and Rule 12(b)(1) standards because it lacks factual allegations showing ***their*** information was disclosed. (*See* Mem. at 21–26.) Plaintiffs fail to identify a single factual allegation showing that any specific disclosure occurred. (*See* Opp'n at 28–36.) Instead, Plaintiffs rely on conclusory allegations and distinguishable case law that does not support standing under Rule 12(b)(1) or show that they state a claim under Rule 12(b)(6).

***First***, Plaintiffs attempt to cast their conclusory allegations as the factual ones required to satisfy pleading standards under Rule 12(b)(6) and support standing under Rule 12(b)(1). Plaintiffs point to their identical allegations that they "used [their] subscription . . . to request and obtain prerecorded videos" and that MLBAM "disclosed . . . information concerning Plaintiff" to Meta or Snapchat. (Opp'n at 29–30 (quoting Compl. ¶¶ 12, 19, 28, 34, 35).) But these allegations merely echo the statute. *Compare* (Compl. ¶¶ 12, 19, 26, 28, 34, 35), *with* 18 U.S.C. § 2710(a)(3) (defining "personally identifiable information" as "identif[ying] a person as having requested or obtained specific video materials or services"), *and id.* § 2710(b)(1) (prohibiting "disclos[ing] . . . personally identifiable information concerning any consumer."). These boilerplate recitations of "the elements of a claim" do not suffice under Rule 12(b)(6). *See Saliba v. Five Towns Coll.*, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014). Likewise, allegations that are "wholly conclusory and

unsupported by any facts [are] insufficient to support standing" under Rule 12(b)(1). *Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 3 (2d Cir. 2016).

Plaintiffs then point to their general allegations about how the Meta and Snapchat Pixels—the website tools they claim are responsible for the disclosure of users' data they challenge—allegedly function. (*See* Opp'n at 32–34 (citing Compl. ¶¶ 4, 13, 20, 26, 36, 69).) But these allegations amount to a request for an advisory opinion based "upon a hypothetical state of facts" about the Meta and Snapchat Pixels, which the Court cannot provide. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (cleaned up); (*see also* Mem. at 25–26).

Plaintiffs also attempt to dodge the implications of a recent decision adopting an argument just like MLBAM's, *Beagle v. Amazon.com, Inc.*, by saying it involved Amazon.com technology rather than Facebook and Snapchat Pixel technology. (Opp'n at 35.) But the technologies involved do not alter *Beagle*'s core reasoning: that a VPPA complaint must contain factual allegations showing "that a disclosure has ***affirmatively*** taken place," not just allegations consistent with "the mere ***possibility*** that information could be disclosed." No. C24-03136JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (cleaned up). Like in *Beagle*, Plaintiffs' allegations are merely consistent with the ***possibility*** of a disclosure and do not satisfy pleading standards under Rule 12(b)(6) or support standing under Rule 12(b)(1). *See id.*; (*see also* Mem. 22, 24).

***Second***, none of Plaintiffs' cases addressing standing requirements under Rule 12(b)(1) or plausibility requirements under Rule 12(b)(6) dealt with the argument MLBAM raises here: that Plaintiffs fail to plausibly allege any disclosures of their data occurred at all. In *Collins*, for example, the defendant argued that the plaintiff lacked standing because he failed to allege details like "the dates he requested or obtained" videos. 721 F. Supp. 3d at 281. The court found "these details" not necessary "to allege that [the plaintiff] suffered an injury in-fact." *Id.* at 281–82. By

contrast, Plaintiffs' complaint here lacks not just details but ***any*** factual allegations supporting a disclosure of their individual information. Plaintiffs also cite *Austin-Spearman v. AMC Network Entertainment LLC* and similar cases addressing whether a VPPA plaintiff must plead "harm resulting from [the] disclosure rather than simply [the] disclosure itself." 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015); (*see also* Opp'n at 31–32 (citing other cases addressing the same issue)). The issue here, by contrast, is that Plaintiffs have not adequately alleged the "disclosure itself," making *Austin-Spearman* and similar cases inapposite. *See also Austin-Spearman*, 98 F. Supp. 3d at 668, 671 (finding standing but dismissing claim under Rule 12(b)(6) for failure to plead key VPPA element).

Whether for lack of standing or failure to state a claim, the absence of any factual allegations showing disclosure of Plaintiffs' information means they cannot sustain a VPPA claim.

### b. Plaintiffs fail to allege that their social-media profiles are publicly visible.

Plaintiffs' VPPA claims also fail because they do not allege that their social-media profiles are publicly visible. Without these allegations, Plaintiffs do not credibly plead that purported disclosures of their Facebook IDs ("FIDs") and Snapchat identifiers reveal the "personally identifiable information" ("PII") required to state a VPPA claim. (*See* Mem. at 26–30.)

Plaintiffs' arguments to the contrary are meritless. ***First***, Plaintiffs focus on a divide in the case law already acknowledged and addressed in MLBAM's opening brief. (*Compare id.* at 27–29, *with* Opp'n at 36–38.) As MLBAM explained, courts are split over whether an FID alone constitutes PII or whether VPPA plaintiffs also must plead factual allegations supporting that the Facebook profiles corresponding with those FIDs can be used to identify them. (*See* Mem. at 27–29.) The Court should follow the better-reasoned decisions finding that a VPPA plaintiff must plead facts supporting that they, personally, would be identified by any supposed transmissions of their FIDs to state a claim. (*See id.* at 27–28 (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp.

3d 714, 720 (N.D. Cal. 2023); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 857 (C.D. Cal. 2024); *Smith v. Trinity Broad. of Tex., Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024)).)

Plaintiffs try to distinguish their case from *Ghanaat* and *Heerde* by saying that, unlike those plaintiffs, they "allege personal information existed on their Facebook page that could be used to readily identify them." (Opp'n at 38.) Rather than identify these allegations, Plaintiffs return to their general assertions that "a 'subscriber's Meta profile . . . publicly identifies the subscriber by name (and contains other personally identifying information about the subscriber as well).'" (*Id.* at 37–38 (citing Compl. ¶¶ 4, 69).) But what a "Meta profile" generally includes does not clarify what PII if any, **Plaintiffs'** profiles include. (*See id.*) Like in *Ghanaat*, *Heerde*, and *Trinity*, Plaintiffs' missing allegations about publicly visible PII warrant dismissal. (*See* Mem. at 26–30.)

***Second***, Plaintiffs spend significant time on an issue the Court need not reach: a circuit split over the meaning of "personally identifiable information" in the VPPA. "The majority of courts to address this issue," including the Third and Ninth Circuits, have applied an "ordinary person" standard to determine what qualifies as PII. *See Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (cleaned up); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985–86 (9th Cir. 2017). These courts reason that the VPPA's "prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit ***an ordinary person*** to identify a specific individual's video-watching behavior." *Nickelodeon*, 827 F.3d at 267. Plaintiffs instead urge the Court to follow a minority position—the First Circuit's broader test for PII in *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016). (*See* Opp'n at 36–37.)

To begin, Plaintiffs misleadingly say that the "ordinary person test is not the law of this

Circuit" and the Second Circuit has "rejected" a narrow definition of PII. (*Id.* at 36, 40.) In fact, the Second Circuit has not yet weighed in. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 549 n.10 (2d Cir. 2024) ("we need not and do not explore [the definition of PII] in this appeal").

Nor does the Court need to predict the Second Circuit's position on this issue to determine the insufficiency of Plaintiffs' pleadings. *Yershov* made clear that "there is certainly a point at which the linkage of information to identity becomes too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work." 820 F.3d at 486. As MLBAM has shown (*see* Mem. at 26–30; *supra* at 18–20), absent allegations that Plaintiffs' social-media profiles are publicly visible, "the linkage" of their social-media identifiers to their "identity becomes too uncertain," even under *Yershov*'s test. 820 F.3d at 486. Thus, no matter how PII is defined, Plaintiffs must allege that their social-media profiles are public to sustain their claims.

**Third**, Santiago makes a failed attempt to defend his ill-pleaded Snapchat allegations even though no court has held that Snapchat identifiers qualify as PII. (*See* Mem. at 30.) Santiago cites no authority to the contrary. Instead, Santiago claims that his email address and phone number supposedly sent to Snapchat qualify as PII. (Opp'n at 38–39 (citing Compl. ¶¶ 5, 106, 109).) He cites no case finding an email address or phone number to be PII in the Snapchat context. Not only that, but he nowhere alleges that his email address is even associated with his Snapchat account. (*See* Compl. ¶ 27.) Nor does he credibly allege that his phone number could be used to identify him by anyone other than a Snapchat employee. (*See id.* ¶¶ 27, 110 (implausibly alleging someone could use a "free online reverse lookup" site to find him using his phone number).)

Indeed, Santiago's argument confirms that his Snapchat allegations are based on precisely the sort of recipient-dependent theory of PII disclosure rejected by *Triller* and other courts. *See* 598 F. Supp. 3d at 91–92; (*see also* Mem. at 29–30 (citing *Eichenberger*, 876 F.3d at 986; *Heerde*, 741

F. Supp. 3d at 857)). Santiago theorizes that "***Snapchat*** . . . automatically matches the . . . user with his or her Snapchat profile." (Opp'n at 40 (emphasis added).) But as numerous courts have held, (*see* Mem. at 29–30), simply because a "sophisticated" party like Snapchat could combine disclosed information with other information to identify the plaintiff does not make the disclosed information PII. *Heerde*, 741 F. Supp. 3d at 857–58. Santiago fails to refute this point.

Finally, Santiago unsuccessfully tries to distinguish *Triller* and another case relied on by MLBAM, *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015), as involving non-pixel technologies that disclosed anonymized device identifiers. (*See* Opp'n at 38–41.) But the technology involved in these cases does not change the core reasoning on which MLBAM relies: that, to qualify as PII, the alleged disclosure must include information that allows identification of a particular individual by more than just one sophisticated party. Santiago's Snapchat-based claim fails to clear this hurdle. (*See* Mem. at 30–32.)

*      *      *

The VPPA prohibits disclosures of information that "***identifies a person*** as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3) (emphasis added). Here, because Plaintiffs' allegations do not show that sharing Plaintiffs' FIDs or Snapchat identifiers would identify ***them***, their VPPA claims should be dismissed.

## CONCLUSION

Based on a binding, unambiguous class-action waiver in a TOU that Plaintiffs agreed to, the Court should strike Plaintiffs' class allegations under Rule 12(f). The Court should also dismiss Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1).

Dated: February 28, 2025

Respectfully submitted,

By: *S/ Andrew Rima*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
 BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 28, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

_S/ Andrew Rima_
Andrew Rima

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing document complies with this Court's word count requirements and contains 7,679 words. Pursuant to Local Rule 7.1(c), this is exclusive of the caption, table of contents, table of authorities, signature block, and required certificates.

_S/ Andrew Rima_
Andrew Rima