

Alan Littmann<br>
312.881.5969<br>
alittmann@goldmanismail.com

**VIA ECF**

May 30, 2025

Hon. Gabriel W. Gorenstein
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 519
New York, New York 10007

Re: *Golland, et al. v. Major League Baseball Advanced Media, L.P.*, No. 1:24-cv-06270-GHW-GWG

Dear Judge Gorenstein:

  Defendant MLB Advanced Media, L.P. ("MLBAM") responds to Plaintiffs' May 21, 2025 letter addressing the effect of the Second Circuit's decision in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), on MLBAM's fully briefed motion to dismiss and to strike class allegations, ECF No. 35. Contrary to Plaintiffs' assertions, *Solomon* is binding precedent requiring dismissal of this case because it confirms that Plaintiffs fail to allege a disclosure of their personally identifiable information ("PII"), as required to state a claim under the Video Privacy Protection Act ("VPPA"). After *Solomon*, VPPA claims like Plaintiffs' based on the alleged disclosure of Facebook IDs ("FIDs") through the operation of the Meta Pixel fail because numerical identifiers like FIDs cannot plausibly be used by an "ordinary person" to identify someone—the test adopted in *Solomon* to define PII under the VPPA. Nor does Plaintiff Santiago's claim based on the alleged disclosure of his Snapchat identifier survive after *Solomon* because that claim depends on a sophisticated recipient—not an "ordinary person"—being able to identify Santiago. Indeed, Plaintiffs' letter does not even dispute that their VPPA claims premised on disclosures of FIDs fail under *Solomon*. Instead, Plaintiffs merely point out that Second Circuit's mandate has not yet issued. (*See* Response Letter, ECF No. 43, at 1.) Once the Second Circuit has issued its mandate in *Solomon*, this case should be dismissed with prejudice, the same result endorsed in *Solomon*.

  *Solomon* forecloses Plaintiffs' claims because it leaves no room for the disclosure of FIDs to qualify as disclosures of PII under the VPPA. In *Solomon*, the Second Circuit adopted the "ordinary person" standard used by the Third and Ninth Circuits to determine what qualifies as PII under the VPPA. Under this standard, PII "encompasses information that would allow an ordinary

**Chicago** 200 South Wacker, 22nd Floor, Chicago, IL 60606
**Dallas** 7557 Rambler Road, Suite 1450, Dallas, TX 75231
**Santa Monica** 100 Wilshire Boulevard, Suite 1760, Santa Monica, CA 90401      goldmanismail.com

person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." *Solomon*, 136 F.4th at 52; *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (holding that PII "applies only to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting "the Third Circuit's 'ordinary person' standard"). The Third Circuit in *Nickelodeon* found that "digital identifiers" linked to the plaintiffs were not personally identifiable information protected from disclosure by the VPPA because an "ordinary person" could not plausibly use the identifiers to find an individual. 827 F.3d at 289–90. Likewise, the Ninth Circuit in *Eichenberger* held that serial numbers on the plaintiffs' streaming devices were not PII because only a sophisticated third party with access to other information could use the serial numbers to identify the plaintiffs. 876 F.3d at 986. And the Second Circuit in *Solomon* concluded that FIDs were not "vastly different" from the numerical identifiers rejected as PII in *Nickelodeon* and *Eichenberger*. 136 F.4th at 55. Rather, the court found that it was "not plausible that an ordinary person" would understand that the string of numbers comprising an FID could be used to look up a person's Facebook profile and identify a person. *Id.* at 54. The court described no circumstance in which a VPPA claim based on disclosure of an FID could satisfy the "ordinary person" test and state a claim. *See id.* Thus, after *Solomon*, VPPA claims premised on the disclosure of FIDs, like Plaintiffs', fail as a matter of law.

Plaintiffs' FID-based VPPA claims also fail for an additional reason under *Solomon*. The *Solomon* court explained that "even assuming . . . that an ordinary person could somehow gain access to" a transmission including an FID and an explanation of what the string of numbers comprising an FID means, "the Complaint is also devoid of any details about **how** an ordinary person would use an FID to identify **Solomon**." *Id.* (second emphasis added). The same is true here. Plaintiffs' complaint lacks any details showing how an ordinary person could identify **them** in particular by using their FIDs to find their Facebook profiles. (*See generally* Am. Compl., ECF No. 34; *see also* Mem., ECF No. 36, at 26–32; Reply, ECF No. 39, at 20–23 (explaining that their complaint lacks key factual allegations about Plaintiffs in particular).)

Plaintiffs do not dispute that *Solomon* forecloses their VPPA claims based on disclosure of their FIDs. Instead, they assert that their claims should still survive under their theory that MLBAM disclosed "their email address[es]' [and] the fact that they purchase[d] streaming service subscription[s] . . . **to Snapchat via the Snapchat Pixel**." (Response Letter, ECF No. 43, at 1–2.) But only Plaintiff Santiago alleges a Snapchat claim, and MLBAM's supporting memoranda explained multiple independent reasons why this claim should be dismissed. (*See* Mem., ECF No. 36, at 26–32; Reply, ECF No. 39, at 20–23.) One of these reasons is that Plaintiff Santiago premises his Snapchat claim on a recipient-dependent theory of PII. That is, he posits that based on the alleged disclosures, someone at Snapchat could identify him. (*See, e.g.*, Am. Compl., ECF No. 34 ¶¶ 5, 28, 100–15.) But *Solomon* confirms that recipient-dependent theories of PII fail, explaining that PII explicitly **does not** include "information that only a sophisticated technology company could use" to identify someone. *Solomon*, 136 F.4th at 52; (*see* Reply, ECF No. 39, at 22–23 (further describing why Plaintiffs' recipient-dependent, Snapchat-based claim fails)). Plaintiff Santiago's Snapchat-based claim thus fails under *Solomon* just like Plaintiffs' FID-based claims.

Plaintiffs' point that the Second Circuit has not yet issued its mandate in *Solomon* betrays

Page 3

the weakness of their position. MLBAM never requested that the Court render its decision immediately (*see* MLBAM Letter, ECF No. 41), nor did the Court express intent to do so. Instead, the Court can simply wait to issue a decision until the appellant's potential petition for rehearing has been decided. Once the mandate issues, this case should be dismissed under *Solomon* based on Plaintiffs' failure to allege a disclosure of PII under the VPPA, as well as for the other reasons identified in MLBAM's motion and supporting memoranda.

And as in *Solomon*, Plaintiffs' VPPA claim should be dismissed with prejudice. Plaintiffs have already amended their complaint once, *see* ECF No. 34. Plaintiffs have been "put on notice of the deficiencies in the [c]omplaint and had ample opportunity to address them" through several rounds of briefing over many months. 136 F.4th at 56 (quotation marks omitted). Despite that, Plaintiffs have not suggested any way they *could* amend to surmount their pleadings' fatal flaws. Accordingly, the Court should dismiss Plaintiffs' complaint with prejudice.

Sincerely,

Alan Littmann

Cc: Counsel of Record (via ECF)